PER CURIAM.
Terance Valentine appeals an order of the circuit court denying his motion to vacate his conviction for first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.850. He also petitions this Court for a writ of habe-as corpus.[1] For the reasons that follow, we affirm the denial of his motion and deny his habeas petition.
I. BACKGROUND
Terance Valentine met and married Livia Romero prior to emigrating with her to the United States from their native Costa Rica. Valentine v. State, 616 So.2d 971, 972 (1993) (Valentine I). In New Orleans, the couple adopted a child, but eventually divorced in 1986.[2] Id. Romero later “married” Ferdinand Porche and moved with him to Tampa to start a family.[3] Id. After learning of the couple’s “marriage” and relocation, Valentine began placing telephone threats to the couple’s home. Id. In September of 1988, Valentine brutally attacked Romero and Porche in their home, drove the couple to a remote location, and shot them both in the head. Id. The trial court’s sentencing order describes Valentine’s attack as follows:
On September 9, 1988, Ferdinand Porche returned to his home in mid-afternoon expecting to meet his pregnant wife and small child. Instead he was greeted by a bullet in the back which [severed his spinal cord and] rendered him paralyzed from the waist down. Mr. Porche was then confronted by Mr. Valentine who announced “this is my revenge.” Mr. Porche was forced to crawl into a bedroom where he found his wife nude, bound, and gagged and his baby crying and covered in blood. Mr. Valentine then pistol whipped Mr. Porche. Mr. Porche’s face was lacerated, his jaw was broken, and several teeth were knocked out. According to the medical examiner there were at least three separate blows to Mr. Porche’s face. After administering this beating Mr. Valentine made his purpose clear, announcing, “I’m gonna kill you, but you’re gonna suffer. This is not going to be easy.” Further tortuous acts included stabbing Mr. Porche in the buttocks — the knife stopping only because it struck bone, kicking Mr. Porche in the chest, and dragging him after he was bound hand and foot with [baling] wire. The medical examiner testified that all of the above injuries occurred while Mr. Porche was alive, that none was immediately life threatening, and none would immediately result in a loss of consciousness. Mrs. Porche testified that Mr. Porche told her he was in so much pain that he did not know why he did not lose consciousness. Mrs. Porche testified she could feel him touch her as if to reassure her while they were in the back of the Blazer being transported [to an isolated area].
*49 While the fatal gunshot resulted in near instantaneous loss of consciousness and death, the ordeal leading up to his death was quite lengthy. Mr. Porche was beaten and degraded in his home. Trussed like an animal he was kidnapped and taken on a nine-mile trip to his slaughter. Either due to the gunshot wound to his spine or through the stress of the ordeal Mr. Porche lost control of this bowels and was covered with his own excrement.
Paralyzed and bound hand and foot with wire there was nothing Mr. Porche could do to save himself. Nor was there anything he could do to protect his wife, who he knew was the ultimate object of Mr. Valentine’s barbarous intent. Nor could he know what would happen to his ten-month-old daughter or what would become of Mrs. Porche’s adopted child. The horror, terror and helplessness that Ferdinand Porche experienced prior to being shot in the eye at point blank range are evident.
Valentine v. State, 688 So.2d 313, 314-16 (Fla.1996) (Valentine II).
Somehow, Romero survived the attack and identified Valentine as her attacker. Valentine I, 616 So.2d at 972. After being released from the hospital, Romero received another series of threatening phone calls from Valentine, which she recorded with a telephone and recorder supplied by the police. Id. Valentine was later apprehended and was charged with armed burglary, two counts of kidnapping, grand theft, first-degree murder for the death of Porche, and attempted first-degree murder for the shooting of Romero. Id.
“Valentine was convicted on all counts, the jury recommended death on the first-degree murder charge by a ten-to-two vote, and the judge imposed a sentence of death, finding three aggravating circumstances and three mitigating circumstance[s]. This Court reversed the conviction and vacated the sentence due to a jury selection error under State v. Neil 457 So.2d 481 (Fla.1984). On retrial, Valentine was again convicted on all counts but this time he waived the jury advisory sentence and presented mitigating evidence directly to the judge.” Valentine II, 688 So.2d at 315.
During the penalty phase, Valentine presented the testimony of three lay witnesses, one of whom was his older sister, and a joint stipulation that Dr. Gamache, a forensic psychologist, found Valentine to be able to adjust well to prison life and make a positive contribution if he were to receive a life sentence. The sentencing court found four aggravators[4] and four mitigators[5] and sentenced Valentine to death. After Valentine was again convicted on all charges and resentenced to *50 death, this Court, on direct appeal,[6] reversed Valentine’s conviction for attempted first-degree murder[7] but affirmed his death sentence because the commission in the course of a violent felony aggravator was still supported by Valentine’s armed burglary and kidnapping convictions. Id. at 317-18.
Valentine’s postconviction motion, as amended, raised* fourteen claims and numerous subclaims.[8] A Huff [9] hearing was held, and Valentine was granted an eviden-tiary hearing on multiple claims of ineffective assistance of counsel. Following the evidentiary hearing, the trial court denied all of Valentine’s claims. Valentine now appeals the denial of his postconviction motion and petitions this Court for a writ of habeas corpus.
*51 II. POSTCONVICTION MOTION
Valentine raises the following arguments: (A) counsel was ineffective for failing to object or otherwise prevent Livia Romero from being referred to or portrayed as divorced from Valentine and married to Ferdinand Porche; (B) counsel was ineffective for failing to adequately investigate and uncover mental health mitigation; and (C) the postconviction court erred in summarily denying three ineffective assistance of counsel claims. As explained below, we affirm the trial court’s denial of relief.
A. Failure to Object to the Portrayal of Livia Romero as Divorced from Valentine and Married to Porche
Valentine claims that counsel was ineffective for failing to object or otherwise prevent Livia Romero from being referred to and or portrayed as being divorced from Valentine and married to Ferdinand Porche throughout his trial. We disagree.
During the guilt phase, Romero testified that she divorced Valentine and married Ferdinand Porche in Louisiana. However, during Romero’s cross-examination, defense counsel demonstrated that no record existed of either the divorce or the subsequent marriage to Porche. At Valentine’s postconviction evidentiary hearing, the prosecutor who tried Valentine’s case explained that there “was a big issue of whether or not [Valentine and Romero] had a valid divorce” and that she never fully resolved the issue because “Louisiana records and laws were very difficult to get to the bottom of.” The prosecutor also explained that Romero held herself out as Livia Porche and believed herself married to Porche and that Romero was addressed accordingly at trial. Valentine’s guilt phase counsel also testified at the hearing and explained that he had determined that Valentine and Romero had never actually become divorced. He then explained that he had proven this fact to the jury by impeaching Romero through the introduction of Louisiana records which showed that no divorce or marriage involving Romero had occurred.
Based on the United States Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has explained that an ineffective assistance of counsel claim must satisfy a two-pronged test to succeed:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Bolin v. State, 41 So.3d 151, 155 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
Under Strickland’s deficiency prong, there is a strong presumption that counsel’s performance was not ineffective. Strickland, 466 U.S. at 690,104 S.Ct. 2052. Further, “[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689,-104 S.Ct. 2052. We have also explained that, regarding deficiency, “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). It is the defendant’s burden to “overcome the pre *52 sumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Strickland, 466 U.S. at 689,104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158,100 L.Ed. 83 (1955)).
Because each prong of Strickland presents a mixed question of law and fact, this Court uses a mixed standard of review whereby it defers to factual findings of the trial court that are supported by competent, substantial evidence, but reviews the trial court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
Here, Valentine has not demonstrated deficiency under Strickland. Defense counsel’s decision to impeach Romero through the introduction of documents that proved that she was still married to Valentine and had not married Porche was a reasonable strategic decision that would have undermined Romero’s credibility in the eyes of the jury. See Charles W. Ehrhardt, Florida Evidence § 608.6 (2012 ed.) (“[T]he credibility of a witness may be attacked by evidence tending to contradict a material fact stated in the testimony of the witness.”); see also Eaton Corp. v. Votour, 895 So.2d 466, 468 (Fla. 1st DCA 2005) (explaining that a witness’s credibility is called into question when that witness is impeached by contradiction). Indeed, defense counsel testified at the evidentiary hearing that the use of the name Livia Porche and the portrayal of Romero as being married to Porche would not have confused the jury because the jurors would have understood that Romero could not be married to Valentine and Porche at the same time. Counsel made a strategic decision to impeach Romero and was not, therefore, .deficient in his performance. See Occhicone, 768 So.2d at 1048.
Accordingly, because Valentine has not demonstrated deficiency under Strickland, we affirm the trial court’s denial of relief. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 (“[Tjhere is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one”).
B. Failure to Adequately Investigate Mental Health Mitigation
Next, Valentine claims that penalty phase counsel was ineffective for failing to adequately investigate and uncover mental health mitigation. We disagree.
Defense counsel had Valentine examined by Dr. Gamache, a forensic psychologist. During his consultation for Valentine’s defense, Dr. Gamache reviewed documents and records from Valentine’s prior incarceration, met with Valentine for a three-hour interview and examination, and also consulted with Valentine’s attorneys regarding his findings. Dr. Gamache did not find any evidence of a mental health issue with Valentine, and ultimately was only able to conclude that Valentine would adapt well to prison and would be able to make a positive contribution if he were given a life sentence.
At his evidentiary hearing, Valentine presented the testimony of Dr. Dee, a clinical psychiatrist. Dr. Dee testified that, based on the recordings of the phone calls that Valentine placed to Romero prior to his arrest and the penalty phase testimony of Valentine’s sister, he believed that Valentine could have a mental disease or defect. Dr. Dee then conducted a lengthy battery of interviews and testing with Valentine. Based on the results, Dr. Dee testified that he believed that Valentine was brain-injured and was operating under an extreme mental or emotional disturbance at the time of the crime. Notably, however, Dr. Dee also testified that Valen *53 tine was “tight lipped” about his mental and emotional history, kept potentially useful information to himself, and even lied to his attorneys and investigators about any potential mental or emotional infirmity. Dr. Dee explained that Valentine was a proud man who would do everything he could to appear intelligent and capable.
 This Court has stated that “an attorney has a strict duty to conduct a reasonable investigation of a defendant’s background for possible mitigating evidence.” State v. Riechmann, 777 So.2d 342, 350 (Fla.2000). And “investigations into mitigating evidence ‘should comprise efforts to discover all reasonably available mitigating evidence.’ ” Blackwood v. State, 946 So.2d 960, 974 (Fla.2006) (quoting Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). This duty to investigate and prepare mitigation exists even where the client objects. See Henry v. State, 937 So.2d 563, 573 (Fla. 2006).
And, where experts are used to investigate and prepare mental health mitigation, “defense counsel is entitled to rely on the evaluations conducted by qualified mental health experts, even if, in retrospect, those evaluations may not have been as complete as others may desire.” Darling v. State, 966 So.2d 366, 377 (Fla.2007). Further, the presentation of more favorable testimony in postconviction proceedings does not render counsel’s investigation into mitigation deficient. See Davis v. State, 875 So.2d 359, 372 (Fla.2003); Rivera v. State, 859 So.2d 495, 504 (Fla.2003); see also Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir.1997) (“[T]he mere fact a defendant can find, years after the fact, a mental health expert who will testify favorably for him does not demonstrate that trial counsel was ineffective for failing to produce that expert at trial.”).
Here, Valentine’s defense counsel was not deficient. Defense counsel conducted a thorough investigation of Valentine’s background in preparation for both the guilt and penalty phases of his trial. Valentine’s counsel and an investigator made multiple trips to Costa Rica to locate witnesses for both the guilt and penalty phases. Trips were also made to Louisiana and Texas as part of the investigation into Valentine’s background. Defense counsel actively conferred with Valentine regarding his defense and trial strategies. And, even though Valentine never indicated to defense counsel, verbally or otherwise, that he could even potentially have a mental health issue, defense counsel had Valentine examined by a mental health expert. We cannot conclude that Valentine’s counsel, based on these efforts, failed to adequately investigate “all reasonably available ” mitigation evidence. Black-wood, 946 So.2d at 974 (quoting Wiggins, 539 U.S. at 524,123 S.Ct. 2527).
We similarly reject any argument that counsel was somehow deficient for failing to uncover the mental deficiencies from which Valentine now claims to suffer. Valentine’s attorneys diligently had him examined by a forensic psychologist despite the fact that they did not have any indication that Valentine could potentially suffer from any mental infirmity. Indeed, Valentine’s attorneys testified that, had there been any indication that Valentine had a mental issue, they would have had him evaluated to an even greater extent by a mental health expert. Following Dr. Ga-mache’s evaluation of Valentine, Dr. Ga-mache could only determine that Valentine could do well and make a positive contribution in prison. This finding is entirely consistent with the impressions that Valentine’s attorneys already had formed regarding Valentine’s mental health. Defense counsel was “entitled to rely on the evaluations conducted by [his] qualified *54 mental health expert! ].” Darling, 966 So.2d at 377.
We also reject Valentine’s argument that defense counsel was ineffective for failing to provide Dr. Gamache with the recordings of the phone calls that Valentine made to Romero. ' Defense counsel made a reasonable strategic decision by opting not to provide Dr. Gamache with the recordings of the phone calls because the recordings would have reflected negatively on Valentine. See Bradley v. State, 33 So.3d 664, 678-79 (Fla.2010) (“We conclude that trial counsel’s decision not to provide his experts with one page of mental health records suggesting that Bradley might be prone to violence without his medications ... [was a] strategic choice! ] based on an informed and reasoned plan of action.”). During the postconviction proceedings, Dr. Dee admitted that Valentine’s phone calls to Romero, in which Valentine threatened Romero and demanded that Romero have the charges against him dropped, could have been Valentine’s rational attempt to scare Romero or intimidate her into not testifying. Defense counsel’s decision to withhold the phone calls reasonably avoided providing detrimental materials to his mental health expert. See id.
Finally, we reject Valentine’s argument that defense counsel was deficient for failing to provide Dr. Gamache with the penalty phase testimony of Valentine’s sister because the penalty phase had not taken place when Dr. Gamache examined Valentine and because Valentine failed to present any evidence that defense counsel even knew what the sister’s penalty phase testimony would ultimately be.
Because Valentine has not demonstrated deficiency under Strickland, we affirm the trial court’s denial of this claim.
C. Summary Denial of Ineffective Assistance of Counsel Subclaims
Valentine next argues that the trial court erred by summarily denying three ineffective assistance of counsel subclaims in which he argued that his counsel should have objected to prosecutorial misconduct during the course of the prosecution’s guilt-phase closing arguments. Because the postconviction motion and the record in this case conclusively demonstrate that Valentine is entitled to no relief, we affirm the trial court’s summary denial.
We have previously stated that, in postconviction proceedings, “a movant is entitled to an evidentiary hearing unless the [postconviction] motion and record conclusively show that the movant is entitled to no relief.” Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). Upon review of a trial court’s summary denial of a postconviction claim, the factual allegations raised, to the extent that they are not refuted by the record, must be accepted as true. Franqui v. State, 59 So.3d 82, 95 (Fla.2011). A defendant is normally entitled to an evidentiary hearing on a post-conviction motion “unless (1) the motion, files, and records in the case conclusively show that the movant is entitled to no relief, or (2) the motion or particular claim is legally insufficient.” Id. Further, a defendant may not merely make conclusory allegations because it is the defendant who bears the burden of establishing “a prima facie case based on a legally valid claim.” Id. at 96. The postconviction court’s decision as to whether to grant an evidentiary hearing on a postconviction motion is tantamount to a pure question of law and is therefore reviewed de novo. Id. at 95.
1. First Alleged Instance of Prosecuto-rial Misconduct.
Valentine first alleges that the prosecutor argued facts not in evidence during *55 closing arguments by stating: “[Defense Counsel] says that the shooting didn’t happen in the back seat of the Blazer, but he ignores the testimony of Dr. Miller that said that there is blood spatter on this Blazer” and that defense counsel’s failure to object to this statement denied him the effective assistance of counsel.
We have previously explained that counsel cannot be deemed ineffective for failing to object to a fair comment which is based on the evidence presented during the trial. Spann v. State, 985 So.2d 1059, 1068 (Fla.2008) (citing Mungin v. State, 932 So.2d 986, 997 (Fla.2006)). Here, the officer who photographed the Chevy Blazer in which Porche’s body was found testified that the photos he took showed blood spatter throughout the Blazer. The forensic pathologist who autopsied Porche’s body also noted that the photos showed that there was blood spatter in the Blazer. Because the prosecutor’s comment was supported by the evidence, counsel cannot be deemed ineffective for failing to object. See Schoenwetter v. State, 46 So.3d 535, 546 (Fla.2010) (“[C]ounsel cannot be deemed ineffective for failing to make a meritless objection.”) (quoting Hitchcock v. State, 991 So.2d 337, 361 (Fla.2008)).
2. Second Alleged Instance of Prosecu-torial Misconduct.
Second, Valentine argues that the prosecution improperly attacked the defense’s case, improperly expressed personal belief as to the validity of Valentine’s alibi defense, and improperly bolstered the prosecution’s case by stating:
Now, [defense counsel] wants you to believe that [Romero] is lying and to have you believe that she is lying, he has to provide you with a motivation for why she was lying and so her motivation is this Costa Rican divorce. He somehow wants you to believe and wants to suggest to you that it is this woman, as she was laying there, bound, bloodied, naked, wondering if she was going to live or die, not knowing if she would ever see her children again, she thought, “Hey, if I say [Valentine] did it, maybe he has got some property in Costa Rica and I will get an attorney, and we will do a property search, and maybe I will get half.”
Valentine claims that his attorney’s failure to object to this comment denied him the effective assistance of counsel.
“[T]his Court [has] held that an attorney’s role in closing arguments is to simply assist the jury in analyzing, evaluating, and applying the evidence, including the attorney’s suggestions as to what conclusions can be drawn from the evidence.” Williamson v. State, 994 So.2d 1000, 1012 (Fla.2008). “Except to the extent [the prosecutor] bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses.” Ruiz v. State, 743 So.2d 1, 4 (Fla.1999) (emphasis added) (quoting United States v. Garza, 608 F.2d 659, 662 (5th Cir.1979)). Similarly, a prosecutor may not ridicule a defendant or his theory of the case, nor may a prosecutor express personal belief in the accused’s guilt in a case. See Ruiz, 743 So.2d at 4; see also Riley v. State, 560 So.2d 279 (Fla. 3d DCA 1990). However, “prosecutorial comments are not improper where, incident to evaluating a witness’ credibility, jurors are told to ask themselves what motive the [witness] would have to deceive them.” Johnson v. State, 801 So.2d 141, 142 (Fla. 4th DCA 2001).
In context, the challenged comment was not improper. The prosecutor did not ridicule or otherwise improperly attack the defense’s theory of the case; she merely described the defense’s theory *56 of the case and stated that the defense wanted the jury to “somehow” believe that theory. Compare Ruiz, 743 So.2d at 5-6 (finding that the prosecutor improperly ridiculed the defense by stating “[tjhere’s no way, no stretch of the imagination because let me tell you one thing, if [the defendant] were Pinoechio, his nose would be so big none of us would be able to fit in this courtroom”) (emphasis omitted), with Craig v. State, 510 So.2d 857, 865 (Fla. 1987) (finding that the prosecutor’s references to the defendant testifying untruthfully and being a “liar” were not improper because “[w]hen counsel refers to a witness or a defendant as being a ‘liar,’ and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence”). Indicating to the jury that, based on the evidence of the case, they should question the plausibility of the defense’s theory of the case is within a prosecutor’s role of assisting the jury to consider and to evaluate the evidence presented. See Hildwin v. State, 84 So.3d 180, 191 (Fla.2011) (“Closing argument is an opportunity for counsel to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence.”) (quoting Merck v. State, 975 So.2d 1054, 1061 (Fla.2007)). It is also proper for a prosecutor to ask the jury to consider what motive a witness would have to lie. See Johnson, 801 So.2d at 142. Further, the prosecutor’s comments did not improperly express her personal belief as to Valentine’s guilt. Any objection to these comments would have been merit-less, and trial counsel cannot be deemed ineffective for failing to make a meritless objection. See Schoenwetter, 46 So.3d at 546.
3. Third Alleged Instance of Prosecuto-rial Misconduct.
Lastly, Valentine argues that trial counsel was ineffective for failing to object to the following comment, which he claims improperly bolstered the prosecution’s case:
What motive does anybody in the world have to do this to Livia Proche [sic] except the man who so hated her and who thought that she was keeping him from his child and who thought that she had his belongings and that they were rightfully his? What other person in the world would do this to Livia Porche and Ferdinand Porche and, before taking them out of the scene, would take the time and the trouble to subject her to the degradation [of] having photos of her mother and having photos of her husband [and] children shredded and dropped over her body? Who else would do this commando raid into that house and really not take anything except the life of her husband? Who else was calling her and telling her to disappear? No one. No one in this world.
“Improper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness’s testimony.” Williamson, 994 So.2d at 1013 (quoting Hutchinson v. State, 882 So.2d 943, 954 (Fla.2004)). But “[m]erely arguing a conclusion that can be drawn from the evidence is permissible fair comment.” Griffin v. State, 866 So.2d 1, 16 (Fla.2003).
The challenged comment was not improper. In this context, comments of this sort are properly within the prosecutor’s role in presenting evidence to the jury and suggesting what conclusions can be drawn from that evidence. See Williamson, 994 So.2d at 1012. Fairly read, this comment is the state’s argument that, *57 based on the evidence adduced at trial and contrary to the defense’s alibi theory, no other person than Valentine would have had a motive to act in the way that Romero and Porche’s assailant acted. See Hild-win, 84 So.3d 180. At no point did the prosecution make any comment that could be seen as placing the government’s credibility or prestige behind a witness. Nor did the prosecutor indicate that there was additional, undisclosed evidence that was indicative of Valentine’s guilt. The record clearly demonstrates that these were “permissible fair comment[s]” made by the State. Griffin, 866 So.2d at 16. Accordingly, defense counsel was not ineffective for failing to object. See Sehoenwetter, 46 So.3d at 546.
Because the record conclusively demonstrates that Valentine is entitled to no relief, we affirm the trial court’s summary denial of Valentine’s ineffective assistance of counsel subclaims.
III. HABEAS PETITION
In his petition for writ of habeas corpus, Valentine claims that (A) appellate counsel was ineffective for failing to argue on direct appeal that he was denied a fair trial as a result of prosecutorial misconduct, and (B) and that his Eighth Amendment right against cruel and unusual punishment may be violated because he may not be competent at the time of his execution.[10]
A. Ineffective Assistance of Appellate Counsel
Valentine first argues that he was denied the effective assistance of appellate counsel because appellate counsel failed to argue on direct appeal that Valentine was denied a fair trial as a result of prosecuto-rial misconduct. We disagree; Valentine’s claim is both procedurally barred and without merit.
Ineffective assistance of appellate counsel claims are properly brought in a petition for a writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). In order for habeas relief to be granted for ineffective assistance of counsel, this Court must determine
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). “[I]f a legal issue would in all probability have been found to be without merit had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel’s performance ineffective.” Wyatt v. State, 71 So.3d 86, 112-13 (Fla.2011) (quoting Walls v. State, 926 So.2d 1156, 1175-76 (Fla.2006)). “In fact, appellate counsel is not necessarily ineffective for failing to raise a claim that might have had some possibility of success; effective appellate counsel need not raise every conceivable nonfrivolous issue.” Valle v. Moore, 837 So.2d 905, 908 (Fla.2002) (citing Jones v. Barnes, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and Provenzano v. Dugger, 561 So.2d 541, 549 (Fla.1990)). Unpreserved errors cannot successfully be raised on appeal unless they amount to fundamental *58 error. See Poole v. State, 997 So.2d 382, 890 (Fla.2008).
Valentine’s habeas petition attempts to reargue substantive claims of prosecutorial misconduct that were already raised in his postconviction motion and addressed above. See Spencer v. State, 842 So.2d 52, 60 (Fla.2003) (“We conclude that [the defendant’s] substantive claims of prosecutorial misconduct could and should have been raised on direct appeal and thus are procedurally barred from consideration in a postconviction motion.”). This Court has repeatedly stated that motions for habeas corpus relief may not be used as a second appeal for substantive issues that have already been raised or that are procedurally barred. Swafford v. Dugger, 569 So.2d 1264, 1266 (Fla.1990) (“Allegations of ineffective assistance of appellate counsel may not be used to evade the rule against using habeas corpus as a second appeal.”).
Moreover, Valentine is not entitled to relief because he has not demonstrated deficiency. Only one of the prosecutor’s comments that Valentine argues was improper was objected to at trial and preserved for review on direct appeal, and Valentine has not identified any additional rulings from his trial that amount to fundamental error. See Patton v. State, 878 So.2d 368, 379 (Fla.2004) (“In the absence of fundamental error, appellate counsel cannot be deemed ineffective for failing to raise [an] unpreserved issue.”). The lone comment to which Valentine objected at trial was the prosecution’s statement that Valentine’s sister had been called the day after the crime but did not give information as to Valentine’s location. Valentine’s objection was properly overruled as being a fair comment based on evidence that had been adduced at trial, specifically the testimony of a police officer who had called Valentine’s sister the day after the crime in an effort to find Valentine and who did not hear back from her until after Valentine had been apprehended. See Griffin, 866 So.2d at 16 (“Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment.”). Valentine’s remaining grounds of alleged prose-cutorial misconduct were addressed above in Section II-A and are meritless. Because the record clearly demonstrates that the challenged comments were not improper, appellate counsel cannot be ineffective for failing to raise a meritless argument. See Wyatt, 71 So.3d at-114-15.
Accordingly, we deny relief on Valentine’s claim of ineffective assistance of appellate counsel.
B. Competency at Time of Execution
Finally, Valentine contends that his Eighth Amendment right against cruel and unusual punishment will be violated because he may be incompetent at the time of his eventual execution. Valentine acknowledges that this claim is not ripe for review since a death warrant has not been issued and asserts that he raises this issue for preservation purposes only. We have repeatedly held that no relief is warranted under similar circumstances. See, e.g., Gonzalez v. State, 990 So.2d 1017, 1035 (Fla.2008) (rejecting claim that defendant may not be competent at the time of execution where defendant acknowledges that claim is not ripe for review and was being raised only for preservation purposes) (citing State v. Coney, 845 So.2d 120,137 n. 19 (Fla.2003)); see also Jones v. State, 845 So.2d 55, 74 (Fla.2003); Hall v. Moore, 792 So.2d 447, 450 (Fla.2001). Valentine, therefore, is not entitled to relief on this claim.
IV. CONCLUSION
For the reasons set out above, we affirm the denial of postconviction relief and also deny Valentine’s habeas petition.
It is so ordered.
*59 PARIENTE, LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., concurs in result.
QUINCE, J., recused.

. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

. As will be discussed below, this divorce never legally took place.

. As will be discussed below, Romero never legally married Porche.

. In aggravation, the sentencing court found: (1) Valentine was convicted of a prior violent felony; (2) Valentine committed murder in the course of a burglary and kidnapping; (3) the murder of Ferdinand Porche was heinous, atrocious, or cruel; and (4) the murder of Ferdinand Porche was committed in a manner that was cold, calculated and premeditated. Valentine, 688 So.2d at 316 n. 4. The trial court’s sentencing order stated, without specifying what weight was given to which aggra-vators, that "the aggravating circumstances present in this case outweigh the mitigating circumstances present."

. In mitigation, the sentencing court found and gave slight weight to each of the following: (1) the crime was out of character for Valentine and occurred in the course of a single period of aberrant behavior; (2) Valentine is a skilled worker who can be expected to contribute to the prison system; (3) Valentine has a large family that will love and support him while he is in prison; (4) Valentine did not resist arrest, has adapted well to incarceration, is likely to function well in prison, has been a model inmate without disciplinary problems, and has behaved appropriately in court and in jail. Valentine, 688 So.2d at 316 n. 5.

. On direct appeal, Valentine claimed that the trial court erred by (1) finding that the husband and wife privilege did not bar Romero's testimony about Porche’s murder; (2) denying Valentine's motion to suppress post-arrest statements that Valentine had made to the police; (3) denying Valentine's motion to strike testimony by the state’s footprint expert on the ground that the testimony was too speculative; (4) declining Valentine’s motion to appoint a jury selection expert; (5) not allowing Valentine to have the concluding argument before the jury even though Valentine had presented alibi witnesses during his defense; (6) giving the jury the standard jury instruction on reasonable doubt; (7) convicting Valentine of attempted first-degree murder because the conviction could rest on attempted felony murder, which is a nonexistent offense; (8) finding the murder to have been cold, calculated, and premeditated; and (9) failing to find several mitigators. Valentine, 688 So.2d at 316 n. 6.

. The jury was instructed on two possible theories, attempted first-degree felony murder and attempted first-degree premeditated murder, and the verdict did not state on which ground the jury relied. Valentine, 688 So.2d at 317. After Valentine was sentenced, this Court held in State v. Gray, 654 So.2d 552 (Fla. 1995), that attempted first-degree felony murder does not exist in Florida. Because the jury may have relied on an improper theory, Valentine’s conviction for attempted first-degree murder was reversed. Valentine, 688 So.2d at 317.

. Valentine claimed: (1) his conviction could not be sustained because the alleged name of the victim was “Livia Porche” and the only proof offered showed that the victim’s name was “Livia Maria Romero”; (2) the trial court erred by denying his motion to sever all counts in the indictment relating to Ferdinand Porche; (3) the trial court erred in allowing the introduction of inculpatory recorded communications that were deliberately elicited from Valentine after he had been indicted; (4) "fruit of the poisonous tree” should not have been introduced at trial because it resulted from Valentine’s illegal arrest; (5) law enforcement failed to advise the Costa Rican consulate of Valentine’s arrest and also failed to advise Valentine of his rights to contact the consulate under the Vienna Convention on Consular Relations; (6) he was denied a fair trial due to prosecutorial misconduct during closing argument which rendered the guilty verdicts fundamentally unfair and unreliable; (7) he was improperly convicted of grand theft because the property that was allegedly stolen was a marital asset acquired during Valentine’s marriage to Romero; (8) he was improperly sentenced to death because his vacated conviction for attempted murder was the sole support for the prior violent felony aggravator found by the sentencing court; (9) the trial court erred in failing to file written reasons for its departure from the sentencing guidelines; (10) the prosecutor directed an illegal search of Valentine’s jail cell and improperly ■ seized Valentine’s personal papers; (11) that, as explained in fifteen subclaims, he was denied effective assistance of counsel; (12) he was denied effective assistance of counsel by penalty phase counsel’s failure to investigate and uncover mental health mitigation and by penalty phase counsel's failure to otherwise prepare for the penalty phase of the trial; (13) he was deprived of a fair trial due to cumulative procedural and substantive error; (14) his right to be free from cruel and unusual punishment will be violated because he may not be competent at the time of his execution.

. Huff v. State, 622 So.2d 982 (Fla. 1993).

. Valentine also claims that cumulative error warrants relief. However, Valentine is not entitled to such relief because each alleged instance of error is procedurally barred or meritless or both. See Bradley v. State, 33 So.3d 664, 684 (Fla.2010).