DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MUSTAFA A. ABDULLA,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-2606

[July 5, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jack S. Cox, Judge; L.T. Case No. 502015CF012343A.

Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

The Appellant in this case, Mustafa Abdulla, raises a single issue for our review: whether comments made by the prosecutor during closing arguments were impermissible and harmful such that a new trial is required. We agree with Appellant that some of the prosecutor's comments rose to that level, and accordingly reverse and remand for a new trial.

**Background**

The charges against Appellant stem from an incident late at night at a convenience store. According to the State,[1] Appellant was in the store when he pulled a concealed firearm from his waistband and waved it around. Appellant stated that he wanted to kill or shoot someone that night, pointed the gun at a store employee, and later ordered both customers and employees alike out of the store. Based on this theory, the State charged Appellant with aggravated assault with a firearm and with

---

[1] The State's case was based, in large part, on the testimony of the store's employee, who was behind the counter during the incident.

carrying a concealed firearm.

Appellant presented a much different story to the jury. His account was that he picked up the store's firearm, not his own, and used it to defend himself from a customer with a knife. Appellant, through counsel, claimed that he never pointed the gun at the employee.

As part of its case in chief, the State called a close friend of Appellant's as a witness. However, the witness's testimony was largely contradictory to the State's theory of events and to the testimony of the store's employee which had previously been elicited. The witness testified that there was a belligerent customer with a knife, and that Appellant brandished the store's gun in defense.

The State then impeached the witness using his prior inconsistent statements made to an officer shortly after the events at the store. At that time, the witness had stated that Appellant pulled the gun from his waistband and that he had threatened to shoot somebody. When confronted with these statements at trial, the witness admitted that he had previously said those things to the officer, but claimed that he was lying when he did.

During closing arguments, the prosecutor made two sets of comments relevant on appeal. First, he recounted how the witness testified that the gun did not come from Appellant's waistband, but told the jury to disbelieve the testimony, saying "but you heard his [prior] statement." After this comment was objected to and the objection overruled, the prosecutor discussed how the State had impeached the witness's statement by playing his prior statement. The prosecutor then stated the following:

> The statement he gave that morning, I want you to think about the mind-frame of somebody testifying yesterday, or somebody testifying that morning. He gave a sworn statement that morning. That means before five months of meeting with [Appellant], of talking to defense attorneys, of thinking about the case, of strategizing of [sic] theories, of how to get [Appellant]—
>
> [Appellant objected at this point and was overruled]
> . . . .
> Before the chance to meet and talk with his cousin. Before the chance to talk to defense attorneys. Before the chance to come up with a defense to a criminal case came up, that gun

2

as you heard came from the waistband yesterday on the stand, it changed. You don't get to do that five or six months later. He tried to. But when you do, your credibility gets impeached. You can consider that statement as an impeachment of his credibility.

Later during closing arguments, the prosecutor said that the reason it had to play the witness's prior statements was "to get the truth out." He then asked, "What was his truth? The statement on the night that it happened . . . or his statement yesterday . . . [?]" After recounting a variety of contradictions between the witness's prior statement and his testimony, the prosecutor presented one final contradiction, saying as follows:

> "Isn't it true that you said the gun was pulled from his waistband"? "No, never said that." "Want to listen to your statement"? "Oh, yeah, it was pulled from his waistband." The firearm in evidence was pulled from [Appellant's] waistband.

The jury convicted Appellant for improper exhibition of a dangerous weapon or firearm, a lesser included offense of aggravated assault with a deadly weapon, and for carrying a concealed firearm. Appellant was sentenced and this appeal followed.

## Analysis

Claims of improper closing arguments by a prosecutor are reviewed for an abuse of discretion. *Paul v. State*, 958 So. 2d 1135, 1136 (Fla. 4th DCA 2007). The comments must be viewed "within the context of the closing argument as a whole and considered cumulatively within the context of the entire record." *McArthur v. State*, 801 So. 2d 1037, 1040 (Fla. 5th DCA 2001).

### A. Prior Inconsistent Statements

Prior inconsistent statements are admissible for impeachment purposes so long as the goal is to have the jury "disbelieve both statements" rather than to convince the jury "that the prior statement is true and the in-court testimony is false." *Espinoza v. State*, 37 So. 3d 387, 388 (Fla. 4th DCA 2010).[2] Put another way, "[a] witness's prior inconsistent statement to a police officer cannot be used as substantive evidence." *Ivery v. State*, 548 So. 2d 887, 888 (Fla. 2d DCA 1989).

---

[2] No exceptions to this general rule are relevant to this case.

Here, viewing the quoted statements above within the necessary context, we hold that the prosecutor's comments crossed the line from proper argument about impeachment into an improper claim that the prior statements were substantive evidence. Although the prosecutor's initial statements emphasized the impeaching nature of the testimony, the later question to the jury asking "What was his truth?" was a clear attempt to ask the jury to determine *which* of the two statements was true, not to determine *whether* the statement made at trial was true or false. *See Espinoza*, 37 So. 3d at 388. The statements regarding "get[ting] the truth out" crossed the proverbial fine line between impeachment and using the prior inconsistent statements as proof of the matter asserted therein.

*B. Statements Regarding Appellant's Suborning of Perjury*

"Wide latitude is permitted in arguing to a jury." *Hosang v. State*, 984 So. 2d 671, 672 (Fla. 4th DCA 2008). "[T]he prosecution is permitted to comment upon the essential unbelievability of a [witness's] testimony." *Reaves v. State*, 324 So. 2d 687, 688 (Fla. 3d DCA 1976). It is even appropriate for counsel to refer to a witness as a "liar." *Valentine v. State*, 98 So. 3d 44, 56 (Fla. 2012). However, "[a] suggestion that the defendant suborned perjury or that a defense witness manufactured evidence, without a foundation in the record, is completely improper." *Evans v. State*, 62 So. 3d 1203, 1204 (Fla. 4th DCA 2011) (quoting *Cooper v. State*, 712 So. 2d 1216, 1217 (Fla. 3d DCA 1998)). "[T]he fact that a witness is impeached may imply that the witness is lying, but it does not imply that someone else has made the witness change [his] story." *Id.* at 1205 (quoting *Henry v. State*, 651 So. 2d 1267, 1268 (Fla. 4th DCA 1995)).

Here, the prosecutor described how five months of the witness meeting with Appellant, meeting with defense attorneys, and strategizing a defense might have led to him changing his story. This is not an allegation that the witness decided *on his own* to lie and commit perjury, it is an inference that the witness, *through speaking with defense counsel and Appellant*, came up with a defense strategy involving perjury. One can reasonably interpret this as the prosecutor conveying to the jury that Appellant and his counsel were complicit in the witness's alleged perjury.

*C. Harmless Error*

Having determined that the trial court erred in allowing the prosecutor to tell the jury to consider the witness's prior inconsistent statement as substantive evidence and in allowing him to imply that Appellant devised a strategy with the witness in which the witness would perjure himself,

4

the only question remaining is whether these errors were harmless. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (holding that an error is harmless only if "there is no reasonable possibility that the error contributed to the conviction").

We make particular note of the fact that the witness who was impeached was called not by Appellant, but rather by the State itself. Although Appellant did not raise the fact that the witness was called as a reason for reversal, it appears as though the State chose to call this witness for the sole purpose of impeaching him and thereby introducing his prior inconsistent statements. We cannot conclude that the trial court's overruling Appellant's objections to these statements did not contribute to the conviction. The State has not met its burden of showing beyond a reasonable doubt that the errors in this case, which turned entirely on the credibility of the various witnesses, were not harmless.

## Conclusion

The prosecutor's statements during closing arguments which directed the jury to consider prior inconsistent statements as substantive evidence rather than just as impeachment evidence were not proper comments on the evidence. Similarly, the prosecutor's suggestion that the witness committed perjury as part of a strategy devised with defense counsel and Appellant himself was completely improper. The error in allowing these statements to be presented to the jury in closing arguments was not harmless. Accordingly, we reverse Appellant's conviction and remand for a new trial.[3]

*Reversed and remanded.*

GERBER, C.J., and WARNER, J., concur.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**

---

[3] We note that the new trial may not involve a charge for aggravated assault with a firearm, for which Appellant was implicitly acquitted, and may instead only be on the charges which resulted in a conviction: improper exhibition of a firearm and carrying a concealed firearm. *See Green v. United States*, 355 U.S. 184, 189-190 (1957); *Middleton v. State,* 131 So. 3d 815, 815-18 (Fla. 1st DCA 2014).