[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10052

Non-Argument Calendar

_____

VITO PAUL CITO, III,

                                        Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF
CORRECTIONS,
ATTORNEY GENERAL, STATE OF
FLORIDA,

                                        Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:17-cv-02752-CEH-TGW

_____

Before WILLIAM PRYOR, Chief Judge, BRANCH and BRASHER, Circuit Judges.

PER CURIAM:

Vito Paul Cito, III, a Florida prisoner, appeals *pro se* the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. Cito challenges the denial of state postconviction relief on his claims that trial and appellate counsel were ineffective for not contesting jury instructions. Because the state courts did not unreasonably apply clearly established federal law to Cito's claims, we affirm.

## I. BACKGROUND

We divide the background into three parts. First, we describe Cito's trial and direct appeal. Next, we describe Cito's unsuccessful state postconviction proceedings. Finally, we describe Cito's federal habeas corpus proceeding.

### A. Cito's Trial and Direct Appeal

The State of Florida tried Cito for the aggravated assault of Lance Tubbs and for discharging a firearm from a vehicle within

1,000 feet of Tubbs. Tubbs and multiple eyewitnesses to the incident testified that Cito insulted Tubbs's mother inside her home and their verbal altercation continued as the two men walked outside and Cito climbed into his vehicle. Tubbs chased Cito's vehicle on foot yelling threats at him. As Cito sped ahead, he displayed his revolver outside his driver's side window, and then he shot backwards at Tubbs, who was unarmed. Cito argued that he shot at Tubbs in self-defense.

In closing statements, the prosecutor argued that Cito "wasn't worried" about Tubbs, who had "no hope of" and "wasn't going to catch" Cito to burgle his vehicle. The prosecutor also argued that, although Tubbs had been "outside throwing his hands, acting tough, [and] talking tough," "[h]e had been feet away from [Cito] the whole time" and he had not tried to hit Cito inside or outside the Tubbs' house. The prosecutor recounted that Cito's passenger testified he asked Cito why he was shooting at Tubbs and Cito responded, "I will shoot anyone I want to. I don't care."

The trial court instructed jurors that "[a]n issue in this case is whether [Cito] acted in self-defense" and that he had "a defense to . . . both charges . . . if the actions against Lance Tubbs resulted from the justifiable use of deadly force." The trial court told jurors that, if they found Cito acted "in necessary self-defense, you must find him not guilty." It also instructed jurors that if "you have a reasonable doubt . . . [about] whether the defendant was justified in the use of deadly force, you should find [him] not guilty," but if

they made a contrary finding, they "should find him guilty if all the elements of the [criminal] charge have been proved."

The trial court instructed jurors about what constitutes justifiable use of deadly force as follows:

> A person is justified in using deadly force only if the defendant reasonably believes that force is necessary to prevent imminent death or great bodily harm to himself while resisting, one, another's attempt to murder him, two, any attempt to commit burglary upon him, or three, any attempt to commit burglary upon or in any vehicle occupied by him.

> A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent, one, imminent death or great bodily harm to himself or another, or two, the imminent commission of burglary against himself or another."

> However, the use of deadly force is not justifiable if you find, one, Vito Paul Cito initially provoked the use of force against himself, unless A, the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and exhausted every reasonable means to escape the danger other than using deadly force on Lance Tubbs; B, . . . [i]n good faith, the defendant withdrew from physical contact

with Lance Tubbs and clearly indicated to Lance Tubbs that he wanted to withdraw and stop the use of deadly force, but Lance Tubbs continued or resumed the use of force.

The trial court instructed jurors they had to "judge [Cito's use of deadly force] by the circumstances by which he was surrounded at the time the force was used." And it explained that "[t]he danger facing [Cito] need not have been actual" but it "must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force."

The trial court also instructed the jury about the right to stand one's ground if faced with imminent injury:

If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or another or to prevent the commission of a forcible felony.

At Cito's request, the trial court instructed the jury on attempt and burglary. Initially, the trial court read the standard jury instructions that the State had to prove beyond a reasonable doubt that "the defendant" was the wrongdoer. Defense counsel

objected to those instructions. The trial court discussed its plan to reinstruct the jurors and Cito acknowledged he had no objection. The trial court recalled the jurors and stated it had "read the wrong names when it came to the definition of burglary and the definition of attempt to commit a crime." The trial court re-instructed jurors that the State had to prove beyond a reasonable doubt that "Lance Tubbs" had attempted to commit burglary.

The jury found Cito guilty of both crimes and returned a special verdict that he discharged a firearm during the aggravated assault. The district court sentenced Cito to concurrent terms of 20 years for his two crimes.

Cito appealed, but he did not challenge the jury instructions. Cito argued, and the State agreed, that his sentence for discharging a firearm was illegal because it exceeded the maximum sentence of 15 years. The Second District Court of Appeal vacated Cito's sentence for his firearm offense and remanded for resentencing. *Cito v. State*, 150 So. 3d 829 (Fla. Dist. Ct. App. 2014).

### B. Cito's Unsuccessful State Postconviction Proceedings

Cito moved *pro se* for postconviction relief on the ground that trial counsel was ineffective. *See* Fla. R. Crim. P. 3.850. Cito argued that counsel should have challenged the jury instructions requiring proof of attempted burglary "beyond a reasonable doubt" and the prosecutor's closing argument that the victim posed Cito no danger negated his theory of self-defense. But the state postconviction court denied Cito's motion on the ground

that "[t]rial counsel did his best, and was successful in ensuring that the issue of self-defense was presented to the jury." The state appellate court affirmed summarily. *Cito v. State*, 208 So. 3d 78 (Fla. Dist. Ct. App. 2015), *cause dismissed sub nom. Cito v. Jones*, No. SC17-1023 (Fla. June 22, 2017).

Cito next petitioned *pro se* for postconviction relief on the ground that appellate counsel should have challenged the jury instructions. *See* Fla. R. Crim. P. 9.141(d). The state appellate court summarily denied Cito's petition, *Cito v. State*, 229 So. 3d 327 (Fla. Dist. Ct. App. 2016), and the Florida Supreme Court dismissed Cito's appeal. *Cito v. Jones*, No. SC17-1023 (Fla. June 22, 2017).

Cito tried twice to relitigate his claim of ineffectiveness of trial counsel. The state court denied Cito's second motion for postconviction relief on the ground that his claim was procedurally barred, Fla. R. Crim. P. 3.850(h)(2), and the state appellate court affirmed summarily, *Cito v. State*, 250 So. 3d 13 (Fla. Dist. Ct. App. 2018). The Florida Supreme Court dismissed Cito's petition for a writ of habeas corpus, Fla. R. Crim. P. 9.100, on the ground that "relief [was] not authorized." *Cito v. State*, No. SC17-1023 (Fla. June 22, 2017).

### C. Federal Habeas Corpus Proceeding

Cito petitioned the district court for a writ of habeas corpus and repeated his arguments that trial and appellate counsel were ineffective for failing to object to the jury instructions. *See* 28

U.S.C. § 2254. After the State responded, the district court denied the petition. The district court ruled that Cito was not prejudiced by trial counsel's failure to object to the jury instruction or by appellate counsel's failure to raise an unpreserved argument that did not amount to fundamental error.

We granted Cito a certificate of appealability to address his claims of ineffective assistance of counsel. *See* 28 U.S.C. § 2253(c).

## III. STANDARD OF REVIEW

We review *de novo* the grant or denial of a petition for a writ of habeas corpus. *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1260 (11th Cir. 2014). The Antiterrorism and Effective Death Penalty Act "imposes a highly deferential standard for evaluating state-court rulings." *Id.* at 1261 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). A state prisoner is entitled to a writ of habeas corpus only if the state court reached a decision that "involved an unreasonable application of . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1). That is, the state court must have "identifie[d] the correct governing legal principle from the Supreme Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Reed*, 767 F.3d at 1260 (internal quotation marks omitted and alterations adopted). "[A]n unreasonable application of . . . [a Supreme Court decision] must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted). The prisoner "must show that the state court's ruling on the claim . . . was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## III. DISCUSSION

Cito maintains that trial and appellate counsel were ineffective in failing to contest the jury instructions about justifiable use of force. He argues that the instructions erroneously required proof that Tubbs attempted to commit burglary against him, and he argues that his trial and appellate counsel should have challenged that error.

Cito must prove that his counsel's performance was deficient and that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The prejudice component requires that Cito prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability" "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). And Cito must overcome the "doubly deferential" standard that applies in a habeas corpus proceeding by proving "it was necessarily unreasonable for . . . [the Florida courts] to conclude . . . that he had failed to undermine confidence in the jury's [verdicts]." *Id.* at 190.

Even if we assume, like the district court, that trial counsel performed deficiently by not objecting to the poorly-worded jury

instructions, the state court reasonably determined that Cito was not prejudiced by counsel's oversight. Cito could not have prevailed on his claim of self-defense because his use of deadly force was not justifiable. As the state trial court instructed Cito's jury, Florida law allows the use of deadly force only if "[a] person is not engaged in an unlawful activity and . . . is attacked . . . [and] reasonably believes [using deadly force] is necessary . . . to prevent death or great bodily harm to himself . . . ." Fla. Stat. § 776.013(3) (effective Oct. 1, 2005, to June 19, 2014). Multiple eyewitnesses testified that Cito shot at Tubbs from a distance when Tubbs was incapable of harming Cito. There is no reasonable probability that the jury would have found that Cito acted in self-defense. And because, in Florida, appellate counsel could not raise on appeal an unpreserved issue that did not amount to fundamental error, see *Valentine v. State*, 98 So. 3d 44, 57–58 (Fla. 2012), the state court reasonably rejected Cito's claim of ineffective assistance of appellate counsel too.

## IV. CONCLUSION

We **AFFIRM** the denial of Cito's petition for a writ of habeas corpus.