973 So.2d 427 (2007)
Mark Dean SCHWAB, Appellant(s)
v.
STATE of Florida, Appellee(s).
No. SC07-1603.
Supreme Court of Florida.
November 7, 2007.
Appellant's Motion to Stay Execution has been considered by the Court and is hereby denied.
LEWIS, C.J., and WELLS, PARIENTE, CANTERO, and BELL, JJ., concur.
PARIENTE, J., concurs with an opinion.
ANSTEAD, J., dissents with opinion, in which QUINCE, J., concurs.
PARIENTE, J., concurring.
I agree with this Court's denial of the motion to stay execution and hold proceedings in abeyance and write to explain my reasoning. Schwab will likely seek a stay in the United States Supreme Court as was done by the defendant in Berry v. Epps[1] and, in my view, that is exactly the *428 procedure that should be followed in this case. Schwab should seek a stay from the United States Supreme Court and it should be that Court's decision to determine whether it intends a de facto moratorium on the death penalty and whether the issues it is presently reviewing regarding lethal injection justify a stay of Schwab's execution.
More importantly, as to whether this Court should grant a stay, if this were a case involving the guilt or innocence of Mark Dean Schwab, or a case involving the fairness of his penalty phase, or a case involving the broad question of the constitutionality of the death penalty as a sentence in Florida, I would without hesitation vote to grant a stay. If any of these circumstances were present here, it would truly be a travesty of justice to allow an execution to proceed.
The issue in this case, however, is not even an Eighth Amendment challenge to the constitutionality of lethal injection as a method of executing defendants in Florida. Rather, as explained in detail in Lightbourne v. McCollum, 969 So.2d 326 (Fla. 2007), the claim is "whether the method of execution through lethal injection, as currently implemented in Florida, is unconstitutional because it constitutes cruel and unusual punishment" under the Eighth Amendment. Id. at 334 (emphasis added). Specifically, unlike challenges to "prior methods of execution, Lightbourne does not assert that lethal injection is inherently cruel and inhumane, only that if it is not properly carried out, there will be a risk of unnecessary pain." Id. at 346.
Justice Anstead's dissent relies heavily on the fact that the United States Supreme Court has accepted review in a case raising the very issue of lethal injection, Baze v. Rees, ___ U.S. ___, 128 S.Ct. 34, 168 L.Ed.2d 809 (2007), and since we are obligated to follow the Supreme Court's interpretation of the United States Constitution (as are all states), we should grant Schwab a stay and wait for the United States Supreme Court to rule in Baze. Our unanimous decision in Lightbourne acknowledged:
[T]he [United States Supreme] Court recently granted certiorari jurisdiction in Baze v. Rees, ___ U.S. ___, 128 S.Ct. 34, 168 L.Ed.2d 809 (U.S. 2007), to review a Kentucky Supreme Court decision which held that Kentucky's protocol for lethal injection did not violate the Eighth Amendment. In the Baze petition, the petitioners urge the United States Supreme Court to adopt a standard that would interpret the Eighth Amendment to prohibit a method of execution that creates "an unnecessary risk of pain and suffering." Petitioner's Petition for Writ of Certiorari at 6, Baze v. Rees, No. 07-5439, (U.S. Sept. 25, 2007).
Lightbourne, at 339. In fact, in reviewing Florida's current procedures, we used as an alternative standard the one urged by the Baze petitionersthat is, whether the procedures as currently implemented create "an unnecessary risk of pain and suffering." Specifically, we stated in our conclusion in Lightbourne:
[E]ven if the Court did review this claim. under a "foreseeable risk" standard as Lightbourne proposes or "an unnecessary" *429 risk as the Baze petitioners propose, we likewise would find that Lightbourne has failed to carry his burden of showing an Eighth Amendment violation. As stressed repeatedly above, it is undisputed that there is no risk of pain if the inmate is unconscious before the second and third drugs are administered. After Diaz's execution, the DOC added additional safeguards into the protocol to ensure the inmate will be unconscious before the, execution proceeds. In light of these additional safeguards and the amount of the sodium pentothal used, which is a lethal dose in itself, we conclude that Lightbourne has not shown a substantial, foreseeable or unnecessary risk of pain in the DOC's procedures for carrying out the death penalty through lethal injection that would violate the Eighth Amendment protections.
Id, at 352-53 (footnote omitted). The converse is also true; that is, if the inmate is not fully unconscious before pancuronium bromide is administered there is a high probability that an inmate will suffer unnecessary pain.
The fact remains that since lethal injection was adopted as the primary method of execution by the Florida Legislature in 2000, there have been many executions by lethal injection.[2] These executions have been carried out without problems in the administration of the chemicals, other than the admitted complications that occurred in the well-publicized Diaz execution. As a result of the Diaz execution, and the subsequent inquiries by the Governor's Commission and the Department of Corrections into what caused the complications in the Diaz execution, changes in the procedures were made. As we observed in Lightbourne:
Determining the specific methodology and the chemicals to be used are matters left to the DOC and the executive branch, and this Court cannot interfere with the DOC's decisions in these matters unless the petitioner shows that there are inherent deficiencies that rise to an Eighth Amendment violation. Lightbourne has failed to overcome the presumption of deference we give to the executive branch in fulfilling its obligations, and he has failed to show that there is any cruelty inherent in the method of execution provided for under the current procedures.
Id. at 352.
If I were in the executive branch and in charge of lethal injections for this state, I would urge the adoption of a one-drug protocol so that only a lethal dose of sodium pentothal would be necessary.[3] Alternatively, I would explore the use of other *430 drugs that carry less risk of pain than pancuronium bromide or potassium chloride.[4] Further, I would consider other means to monitor the state of consciousness, such as the Bispectral Index (BIS) monitor, and would employ individuals who have the medical training and expertise necessary to adequately assess consciousness. However, to date, the United States Supreme Court has not signaled that it intends for the judiciary to engage in that level of scrutiny.
I anticipate that the United States Supreme Court in Baze will clarify both the precise legal standard that should be used in method of execution cases and, more importantly, to what extent the judiciary should scrutinize the specific choices made by the executive branch in deciding how to carry out lethal injections. I am hopeful that our decision in Lightbourne, which was reviewed based on a fully-developed record, will assist the United States Supreme Court in making its determination, including answering the second question posed in Baze regarding whether an unnecessary risk of pain and suffering is established "upon a showing that readily available alternatives that pose less risk of pain and suffering could be used." Baze, ___ U.S. ___, 128 S.Ct. 34, 168 L.Ed.2d 809 (2007) (petition).
ANSTEAD, J., dissenting.
The circumstances of this case, and especially the United States Supreme Court's pending review of the constitutional issues involved, present this Court with a compelling case for ordering that the execution of the appellant be stayed pending the Supreme Court's resolution of the constitutionality of the use of lethal injection as it is administered in Florida and other states. While the pendency of a case directly on point in the Supreme Court alone constitutes a compelling reason for the entry of a stay, this factor is especially compelling in Florida because our state constitution mandates that this Court must apply the United States Supreme Court's decision on the issue before us. The majority is clearly ignoring that mandate in refusing to grant a stay here.

Present Circumstances
Presently, the defendant is scheduled to be put to death by lethal injection through the administration of what has been referred to as a three-drug cocktail. With the majority's denial of a stay, this execution will be the first in Florida since the execution of Angel Diaz in December 2006. That execution has been widely viewed as "botched" because of the difficulty and the extraordinary amount of time it took to administer the lethal three-drug cocktail, and the perception that Diaz was subjected to extensive and unnecessary pain before finally dying. The Diaz execution resulted in the Governor ordering an immediate halt to any further executions in Florida, and the appointment of a commission to investigate the Diaz execution and the protocols utilized by the Department of Corrections for administering the three-drug cocktail, with a view towards ensuring that any problems, constitutional or otherwise, be identified and remedied. In turn, the findings and recommendations of the special commission and the heightened scrutiny on this method of execution has resulted in modifications to the protocol used by *431 the Department of Corrections to administer lethal injection. It is the resulting modifications in the Department of Corrections' protocols that were ultimately approved by the trial court in rejecting the constitutional claims in Lightbourne v. McCollum, 969 So.2d 326 (Fla.2007), and that this Court has in turn approved on appeal in both Lightbourne and this case.

The Stay
There are several important factors that operate together to produce a compelling case for staying the appellant's execution pending the United States Supreme Court's resolution of the constitutionality of lethal injection and the manner in which it is administered. The first is fundamental and obvious: the consequences of failing to enter a stay will be irremediable. That is, once the appellant is put to death any decision by the United States Supreme Court impacting the use of lethal injection cannot possibly be applied here no matter the merits of the constitutional claims; on the other hand, the grant of a stay will result in no detriment to the State because immediately following any United States Supreme Court's decision denying relief to Baze the State will be free to execute the appellant in accord with that decision.
Two other factors, however, in favor of granting a stay are, perhaps; the most compelling: First, Florida's Constitution expressly mandates that this Court apply the United States Supreme Court's decisions on the cruel and unusual punishment clause of the United States Constitution to any decision we render on the meaning of Florida's cruel and unusual punishment constitutional provision. In other words, in this case there is an explicit command in Florida's Constitution that this Court must follow the United States Supreme Court's decisions on whether death by lethal injection as it is currently being administered constitutes cruel and unusual punishment, the very issue before us. However, as the majority opinion in Lightbourne makes abundantly clear, there is presently no United States Supreme Court decision on this issue. If that was the end of the story, this dissent would not be written. But, that is not the end of story, since we know as an absolute fact that the United States Supreme Court has this very issue pending before it and will be rendering a decision that, pursuant to the mandate in Florida's Constitution, will control the outcome of this case. See Baze v. Rees, ___ U.S. ___, 128 S.Ct. 34, 168 L.Ed.2d 809 (2007). In other words, there is no controlling Supreme Court decision on point at this precise instance, but such a decision is pending. Under these circumstances it is pure sophistry to suggest this Court can ignore the mandate in Florida's Constitution that we apply Supreme Court law to the constitutional issue before us in this case. Why would we rely on speculating on Supreme Court law, as the majority opinion in Lightbourne does, when we know a Supreme Court decision on this very issue is forthcoming? While the majority may be confident in the correctness of its analysis and decision, this Court is constitutionally bound to look to the decision of the United States Supreme Court in the pending case. And, while the risk of some contrary decision by that Court may seem small, there is absolutely no risk of adverse consequences to the State in entering a stay. As the majority opinion in Lightbourne acknowledges, other courts around the country have applied a variety of standards and some have invalidated similar lethal injection procedures. Similarly, stays of execution have been entered in other jurisdictions.
Finally, as noted above, the last execution in Florida obviously did not proceed as contemplated, and, despite our approval *432 of the revised protocols of the Department of Corrections, we cannot know what may happen with the next execution. This is especially true because one of the primary claims of those contesting lethal injection, the necessity of professional medical supervision, remains absent in Florida's protocol. Schwab's plea for a stay is particularly compelling, because unlike Lightbourne, he has not been afforded an evidentiary hearing on any of his claims, including his claim that the three-drug protocol presents a substantially greater risk of inflicting pain than would the administration of a single lethal dosage of sodium pentothal. As noted in Justice Pariente's concurring opinion, this specific issue is before the United States Supreme Court in Baze. Of course, Schwab's right to a hearing on this issue will be mooted by his execution. Further, the defendant is not going anywhere, and, under Florida's law keeping death warrants alive indefinitely, the setting of a prompt date for execution following a United States Supreme Court decision favorable to the State will be a simple task.
For all these reasons I would grant a stay pending the United States Supreme Court's resolution of the constitutional issues involved herein.
QUINCE, J., concurs.
ORDER DENYING REHEARING Appellant's Motion for Rehearing is hereby denied.
ANSTEAD, J., dissenting.
I would grant rehearing, especially on the issue of whether Schwab was denied the right to an individualized evidentiary hearing in which he would be given an opportunity to present his own evidence and contentions in addition to those presented in the Lightbourne case. Unlike Lightbourne, who was granted this opportunity, Schwab has been denied this fundamental right to articulate and prosecute his own claim.
LEWIS, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Berry v. Epps, 506 F.3d 402 (5th Cir.2007), petition for cert. filed, (U.S. Oct. 29, 2007) (No. 07-7348). In Berry, the United States Supreme Court granted a stay pending disposition of Berry's petition for writ of certiorari, providing that if the petition for writ of certiorari is denied, the stay "shall terminate automatically." Id. (U.S. Oct. 30, 2007) (unpublished order). The order also provides that if Berry's petition is granted, "the stay shall terminate upon the sending down of the judgment of the Court." Id. In this case, if Schwab moves the United States Supreme Court for a stay in conjunction with the filing of a petition for writ of certiorari, that Court can decide whether to grant the stay and petition, and can then consider the facts of Schwab and Lightbourne in conjunction with Baze v. Rees, ___ U.S. ___, 128 S.Ct. 34, 168 L.Ed.2d 809 (2007). This provides the State of Florida and this Court with the best chance of receiving specific guidance from the United States Supreme Court as to the constitutionality of future lethal injection procedures.
[2] Those executions have been as follows: Terry Melvin Sims (02/23/2000); Anthony Braden Bryan (02/24/2000); Bennie Demps (06/07/2000); Thomas Harrison. Provenzano (06/21/2000); Dan Patrick Hauser (08/25/2000); Edward Castro (12/07/2000); Robert Dewey Glock, II (01/11/2001); Rigoberto Sanchez-Velasco (10/02/2002); Aileen Carol Wuornos (10/09/2002); Linroy Bottoson (12/09/2002); Amos Lee King, Jr. (02/26/2003); Newton Carlton Slawson (05/16/2003); Paul Jennings Hill (09/03/2003); Johnny Leartice Robinson (02/04/2004); John Blackwelder (05/26/2004); Glen James Ocha (04/05/2005); Clarence Edward Hill (09/20/2006); Arthur D. Rutherford (10/18/2006); Danny Harold Rolling (10/25/2006).
[3] A one-drug protocol, utilizing only a lethal dose of sodium pentothal (sodium thiopental), was recommended by the Protocol Committee appointed by the Corrections Commissioner pursuant to Tennessee Governor Bredesen's Executive Order directing review and adoption of new execution protocols. The recommendation was not adopted. See Harbison v. Little, 511 F.Supp.2d 872, 895 (M.D.Tenn. 2007).
[4] "After the Diaz execution, the report of the Governor's Commission suggested that the Governor have DOC `on an ongoing basis explore other more recently developed chemicals for use in a lethal injection with specific consideration and evaluation of the need of a paralytic drug like pancuronium bromide in an effort to make the lethal injection execution procedure less problematic.'" Lightbourne, at 345 (quoting Governor's Commission, Final Report with Findings and Recommendations (March 1, 2007) at 13).