# Supreme Court of Florida

_____

No. SC17-1400
_____

**MARK JAMES ASAY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC17-1429
_____

**MARK JAMES ASAY,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[August 14, 2017]

PER CURIAM.

Mark James Asay, a prisoner under sentences of death with an active death

warrant, appeals the circuit court's order denying his third successive motion for

postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851

and petitions this Court for a writ of habeas corpus.  We have jurisdiction.  See art.

V, § 3(b)(1), (9), Fla. Const.

## BACKGROUND

The underlying facts of this case have been previously set forth in this

Court's opinion on direct appeal.  See Asay v. State (Asay I), 580 So. 2d 610, 610-

12 (Fla.), cert. denied, 502 U.S. 895 (1991).  A majority of the details described

therein are accurate, with the following exceptions relating to Asay's second

victim.  We have previously described the victim born Robert McDowell as "a

black man dressed as a woman."  McDowell was known to friends and neighbors

as Renee Torres.  Torres was identified at trial by everyone who testified as white

and Hispanic.  Renee Torres née Robert McDowell may have been either white or

mixed-race, Hispanic but was not a black man.  We regret our previous error.

After trial, Mark Asay was convicted of two counts of first-degree murder

for which a jury voted nine to three to recommend death sentences.  We affirmed

the convictions and sentences in Asay I, 580 So. 2d 610.[1]  Asay's sentences

_____

1.  Asay raised seven issues on direct appeal: (1) the trial court erred by
allowing racial prejudice to be injected into the trial; (2) the trial court erred in
failing to advise Asay of his right to represent himself and to conduct an inquiry
when Asay asked to discharge court-appointed counsel; (3) the trial court erred in
denying Asay's pro se motion for continuance of the penalty phase of the trial to
enable him to secure additional witnesses; (4) the prosecution improperly
diminished the jury's role in sentencing; (5) the trial court judge erred by failing to
grant his motion for judgment of acquittal on count I of the indictment charging
him with the first-degree premeditated murder of Robert Lee Booker; (6) the trial

became final when the United States Supreme Court denied his petition for writ of certiorari on October 7, 1991. Asay v. Florida, 502 U.S. 895 (1991).

We affirmed the denial of Asay's initial motion for postconviction relief. Asay v. State (Asay II), 769 So. 2d 974 (Fla. 2000).[2] We also denied Asay's petition for a writ of habeas corpus, filed October 25, 2001.[3] Asay v. Moore (Asay III), 828 So. 2d 985, 989 n.8 (Fla. 2002).

court erred in finding the McDowell murder was committed in a cold, calculated, and premeditated manner; and (7) Asay's death sentence was disproportionate. Asay, 580 So. 2d at 612-14.

2. Asay raised six issues on appeal: (1) judicial bias during the trial and postconviction proceedings resulted in a denial of "a fair and impartial tribunal throughout his proceedings in violation of his due process rights"; (2) the trial court improperly limited the scope of the evidentiary hearing by (a) limiting the testimony of some of Asay's siblings concerning mitigating evidence not presented during the sentencing phase, (b) limiting the scope of Asay's examination of his trial counsel regarding his knowledge of prior inconsistent statements of key witnesses, and (c) refusing to hear the testimony of Thomas Gross recanting his trial testimony; (3) ineffectiveness of counsel during the guilt phase for (a) failing to adequately impeach the State's key witnesses, (b) failing to present a voluntary intoxication defense, and (c) failing to rebut the State's arguments that he committed the crime due to his racial animus; (4) ineffectiveness of counsel during the penalty phase for (a) failing to investigate and present statutory mitigating evidence that he was acting under extreme emotional distress and his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and (b) failing to present nonstatutory mitigating evidence of physical and emotional abuse and poverty during his childhood, alcohol abuse and his history of "huffing" inhalants; (5) the trial court improperly summarily denied several claims; and (6) cumulative error. Asay, 769 So. 2d at 978-89.

3. Asay raised the following claims: (1) ineffective assistance of appellate counsel in failing to argue on appeal that Asay was absent during critical stages of

- 3 -

We affirmed the denial of Asay's successive motion for postconviction relief, in which he argued that Florida's capital sentencing scheme was unconstitutional pursuant to Ring v. Arizona, 536 U.S. 584 (2002). Asay v. State (Asay IV), 892 So. 2d 1011 (Fla. 2004) (table). Additionally, Asay sought and was denied federal relief.[4] Asay v. Sec'y, Fla. Dep't of Corr., Case No. 3:05-cv-00147-J-32PDB, 2014 WL 1463990 at *28 (N.D. Fla. Apr. 14, 2014).

the proceedings; (2) Asay's death sentences are unconstitutional because Asay was impermissibly limited from presenting mitigation, the trial court failed to consider and weigh mitigation, and the prosecutor made impermissible arguments regarding aggravation; (3) ineffective assistance of appellate counsel for failing to raise on appeal the trial court's failure to give a requested instruction on CCP; (4) ineffective assistance of appellate counsel for failing to raise on appeal penalty phase instructions that improperly shifted the burden of proof regarding the appropriateness of a life sentence; and (5) the unconstitutionality of Florida's capital sentencing statute and instructions given pursuant thereto.

4. Asay raised the following eleven claims in the United States District Court for the Northern District of Florida: (1) Asay's rights under the Sixth Amendment to the United States Constitution were violated when, during the trial, Asay informed the trial court that he wished to terminate the services of defense counsel, yet the trial court neither provided substitute counsel nor advised Asay that he had the right to proceed pro se; (2) Asay received ineffective assistance of counsel because counsel delegated the investigation of Asay's case to an investigator and failed to supervise or follow up on that investigator's work product; (3) Asay received ineffective assistance of counsel because counsel failed to meaningfully consult with Asay, failed to obtain and use relevant information about Asay, and dropped all defense preparation when he was informed that Asay had confessed to the defense investigator; (4) Asay received ineffective assistance of counsel because counsel failed to meaningfully prepare for trial; (5) Asay received ineffective assistance of counsel because counsel believed that a first-degree murder conviction in Asay's case was impossible and therefore failed to prepare for the trial and penalty phase, and he labored under the misconception that there could be no defense if Asay confessed; (6) Asay was denied a fair trial when

- 4 -

On January 8, 2016, Governor Rick Scott signed a death warrant scheduling Asay's execution on March 17, 2016. On January 12, 2016, the United States Supreme Court issued its decision in Hurst v. Florida, 136 S. Ct. 616 (2016), holding, in relevant part, that sections 775.082(1) and 921.141(1)-(3), Florida Statutes (2010), were unconstitutional because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury's mere recommendation is not enough." Id. at 619. Asay filed a petition for a writ of habeas corpus on January 19, 2016, and filed his second successive motion for postconviction relief on January 27, 2016.[5] The circuit court summarily denied all four claims and Asay's motion for a stay of execution. Asay appealed and both

_____

racial evidence and argument tainted the trial process; (7) a State witness, Thomas Gross, admitted after trial that his testimony (that Asay was a racist) was a lie, that his testimony was coached, and the prosecutor suborned this conduct; (8) Asay received ineffective assistance of counsel because counsel advised Asay not to testify on his own behalf at trial and at the Spencer hearing; (9) Asay received ineffective assistance of counsel because counsel conceded Asay's guilt during closing argument; (10) Florida's capital sentencing scheme is unconstitutional under Ring; and (11) defense counsel failed to convey an offer of a plea to second-degree murder.

5. Asay raised the following four grounds for relief: (1) newly discovered evidence exists that diminishes the reliability of firearms identification evidence presented at trial; (2) Asay's due process and equal protection rights were violated because he did not have state counsel at the time the Governor signed his death warrant and for the previous 10 years; (3) Asay is entitled to relief under Hurst v. Florida, and that Hurst v. Florida applies retroactively so that the execution should be stayed; and (4) the State violated Brady v. Maryland, 373 U.S. 83 (1963) for suppressing numerous documents Asay recently received.

cases were heard at Oral Argument on March 2, 2016, after which we stayed Asay's execution.

On December 22, 2016, we lifted the stay and issued an opinion denying postconviction relief. Asay v. State (Asay V), 210 So. 3d 1 (Fla. 2016), petition for cert. filed, No. 16-9033 (U.S. Apr. 29, 2017). Asay sought a writ of certiorari in the United States Supreme Court on April 29, 2017. The State filed its brief in opposition on July 3, 2017. The petition is still pending.

Also on July 3, 2017, Governor Scott reset Asay's execution for August 24, 2017. Asay filed his third successive postconviction motion with the fourth circuit, arguing: (1) that he was denied access to public records, (2) that the new lethal injection protocol is unconstitutional; (3) that the manner in which the execution was reset violated due process, and (4) that section 922.06 is unconstitutional. The circuit court denied Asay's claims. This appeal follows.

## ANALYSIS

### Due Process

In this claim, Asay argues that the manner in which his execution was rescheduled violated his rights to due process. Asay also argues that he has been denied due process throughout the proceedings because he was denied access to public records, because he was not permitted a continuance to secure an expert

witness, because he was not permitted to question certain witnesses, and because the circuit court denied his request to stay his execution.

As it relates to Asay's rescheduled execution, the circuit court summarily denied this claim. The circuit court first found that the claim was not cognizable under rule 3.851 and "decline[d] to consider [Asay's] argument as to why, how, and when the [Attorney General] requested the United States Supreme Court for an extension of time to file a brief." The circuit court therefore found that there was no correlation between the Attorney General's action and Asay's due process rights. Finally, the circuit court found the claim without merit.

A defendant is entitled to an evidentiary hearing on a postconviction motion unless it is clear from the motion or record that the movant is not entitled to relief or the claim is legally insufficient. See Jackson v. State, 147 So. 3d 469, 485 (Fla. 2014) (citing Valentine v. State, 98 So. 3d 44, 54 (Fla. 2012)). Conclusory allegations are not sufficient and the defendant must establish a prima facie case based on a legally valid claim. Id. If there is any doubt whether the movant has made a facially sufficient claim, this Court will presume that an evidentiary hearing is required. Id. (quoting Walker v. State, 88 So. 3d 128, 135 (Fla. 2012)).

As discussed in the next issue, Asay cannot demonstrate that he is entitled to relief on his claim that the rescheduling of the warrant violated his right to due process. In fact, it appears that Asay's claim is actually a disagreement with the

process that he is due as articulated by the statute. Asay acknowledges in his next issue that the statute permits exactly what occurred, which means he has been afforded the process available. The circuit court thus correctly concluded that Asay's claim was not cognizable under rule 3.851.

As it relates to the public records requests, the circuit court found that because the purpose of a rule 3.851 motion "is to challenge the validity of [a] [d]efendant's underlying conviction and sentence of death," the circuit court's intermittent rulings did "not give rise to additional claims for attacking the underlying conviction and sentence." Accordingly, the circuit court found the public records claim was not cognizable in a motion for postconviction relief. The circuit court nevertheless considered the merits of the claim and determined that Asay's claim was refuted by the record in several instances and otherwise without merit.

Florida Rule of Criminal Procedure 3.852(i)(2) requires production of public records upon a finding of the following:

(A) collateral counsel has made a timely and diligent search of the records repository;
(B) collateral counsel's affidavit identifies with specificity those additional public records that are not at the records repository;
(C) the additional public records sought are either relevant to the subject matter of a proceeding under rule 3.851 or appear reasonably calculated to lead to the discovery of admissible evidence; and
(D) the additional records request is not overly broad or unduly burdensome.

See Valle v. State, 70 So. 3d 530, 549 (Fla. 2011) (quoting Florida Rule of Criminal Procedure 3.852(i)(2)).

This Court has stated that "a defendant must show how the requested records relate to a colorable claim for postconviction relief and good cause as to why the public records request was not made until after the death warrant was signed." Tompkins v. State, 872 So. 2d 230, 244 (Fla. 2003) (citing Glock v. Moore, 776 So. 2d 243, 254 (Fla. 2001); Bryan v. State, 748 So. 2d 1003, 1006 (Fla. 1999)). In Sims v. State, 753 So. 2d 66, 70 (Fla. 2000), this Court made clear that while the language of the rule and statute provide for the production of records after a warrant has been signed, "this discovery tool is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief." Accordingly, where a defendant cannot demonstrate that he or she is entitled to relief on a claim or that records are relevant or may reasonably lead to the discovery of admissible evidence, the trial court may properly deny a records request. See Pardo v. State, 108 So. 3d 558 (Fla. 2012); Tompkins v. State, 994 So. 2d 1072, 1090 (Fla. 2008); Valle, 70 So. 3d at 547-49.

The disputed records relate to communications between the Attorney General and the Governor's office regarding the rescheduling of Asay's execution and manufacturer information for the drugs used in the lethal injection protocol.

Because Asay cannot demonstrate that he is entitled to relief on claims related to these records, the circuit court properly summarily denied relief.

The circuit court's rulings on Asay's motion for a continuance and the State's motion to exclude witnesses are reviewed for an abuse of discretion. Williams v. State, 209 So. 3d 543, 556 (Fla. 2017). Asay has not demonstrated that the trial court abused its discretion in relation to either ruling. Asay's continuance was requested in order to have his expert testify. The circuit court gave the witness the option to testify at the time convenient to him by any remote method he preferred: telephonically or electronically. Asay's expert was able to testify. The State's motion to exclude witnesses who were members of the execution team is supported by statutory and case law. § 945.10(g), Fla. Stat. (2017); Muhammad v. State, 132 So. 3d 176, 189 (Fla. 2013). Members of the execution team are protected from testifying. Accordingly, the circuit court properly ruled on these motions.

**Lethal Injection Protocol**

Asay argues that the State's adoption of etomidate as the first drug in the lethal injection protocol places him at substantial risk of serious harm in violation of the Eighth Amendment. After an evidentiary hearing, the circuit court found that Asay failed to establish sure or very likely risks of sufficiently imminent danger or a proposed alternative that is readily available. Because there is

competent, substantial evidence to support the circuit court's finding that Asay cannot meet the burden pronounced by the United States Supreme Court in Baze v. Rees, 553 U.S. 35 (2008) (plurality opinion) and Glossip v. Gross, 135 S. Ct. 2726 (2015), Asay's claim must fail.

In Glossip, the Supreme Court provided that a condemned prisoner must: (1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain. Glossip, 135 S. Ct. at 2737 (citing Baze, 553 U.S. at 50, 61).

Four expert witnesses testified at the evidentiary hearing held on this issue. The State presented John Palmer, Associate Director of the Florida Department of Corrections; Dr. Daniel Buffington, a clinical pharmacologist; and Dr. Steven Yun, an anesthesiologist. Asay presented the testimony of an anesthesiologist, Dr. Mark Heath. These witnesses detailed the known effects of etomidate, how it would be used in the protocol, and how it has been used in medical practice.

The pharmacology of etomidate is described by the drug insert as follows:

> Etomidate is a hypnotic drug without analgesic activity. Intravenous injection of etomidate produces hypnosis characterized by a rapid onset of action, usually within one minute. Duration of hypnosis is dose dependent but relatively brief, usually three to five minutes when an average dose of 0.3mg/kg is employed.

- 11 -

The insert also states, "The most frequent adverse reactions associated with use of intravenous etomidate are transient venous pain on injection and transient skeletal movements, including myoclonus." Further, pain is described in the insert, stating:

> Transient venous pain was observed immediately following intravenous injection of etomidate in about 20% of the patients, with considerable difference in the reported incidence (1.2% to 42%). This pain is usually described as mild to moderate in severity but it is occasionally judged disturbing. The observation of venous pain is not associated with a more than usual incidence of thrombosis or thrombophlebitis at the injection site. Pain also appears to be less frequently noted when larger, more proximal arm veins are employed and it appears to be more frequently noted when smaller, more distal, hand or wrist veins are employed.

The information in the inserts was confirmed in the testimony of both anesthesiologists. Even the defense expert, Dr. Heath, testified that most patients do not experience pain.

Based on the testimony heard during the evidentiary hearing and the record before this Court, Asay has not demonstrated that he is at substantial risk of serious harm. Indeed, the record before this Court demonstrates that Asay is at a small risk of mild to moderate pain. As the Supreme Court noted:

> because it is settled that capital punishment is constitutional, it necessarily follows that there must by a constitutional means of carrying it out. And because some risk of pain is inherent in any method of execution, we have held that the Constitution does not require the avoidance of all risk of pain. After all, while most humans wish to die a painless death, many do not have that good fortune. Holding that the Eighth Amendment demands the elimination of essentially all risk of pain would effectively outlaw the death penalty altogether.

<u>Glossip</u>, 135 S. Ct. at 2732-33 (internal alterations and citations omitted).

Asay has also not identified a known and available alternative method of execution that entails a significantly less severe risk of pain. Asay's alternatives have been previously rejected by this Court as speculative. <u>See</u> <u>Correll v. State</u>, 184 So. 3d 478, 490 (Fla. 2015); <u>Muhammad</u>, 132 So. 3d at 197; <u>Valle</u>, 70 So. 3d 530.

Asay also argues that Florida's continued use of a three-drug protocol instead of a one-drug protocol constitutes cruel and unusual punishment in light of evolving standards of decency. The circuit court denied this claim, stating that Asay "failed to establish that the current three-drug protocol presents a serious risk of needless suffering." The circuit court did not err in denying this claim which has been previously rejected by this Court. <u>See</u> <u>Muhammad</u>, 132 So. 3d at 197.

### Section 922.06(2), Florida Statutes

Asay's third claim is that Section 922.06, Florida Statutes, permits the Attorney General to exercise an unfair advantage over the warrant process after a court has entered a stay of execution. Asay's claim is not about the Governor's discretion in the warrant process and does not appear to have been previously addressed by this Court. Nevertheless, Asay is not entitled to relief on this claim because it is not cognizable in a postconviction motion filed pursuant to rule 3.851 and was properly summarily denied.

The circuit court summarily denied this claim. The circuit court's order does not appear to address the constitutional argument and, instead, states that sections 922.052 and 922.06 "are merely rules outlining the procedures used to carry out a death sentence" that Asay has no right to challenge.

Florida Rule of Criminal Procedure 3.851 provides collateral relief from a death sentence or conviction, which Asay is not challenging. His argument is not that the Attorney General's actions invalidate his sentence or the warrant. If Asay were challenging the warrant itself, this Court has previously stated that the statute does not grant death-sentenced inmates a right to challenge the issuance of a warrant. Henry v. State, 134 So. 3d 938, 945 (Fla. 2014). Further, as it relates to the constitutionality of section 922.06, this Court has previously considered and rejected any such argument. See Abdool v. Bondi, 141 So. 3d 529 (Fla. 2014); Muhammad, 132 So. 3d at 197. This Court had also previously considered a challenge to the timing of a warrant and concluded that the Governor is required to follow the timing of the statute. Tompkins, 994 So. 2d 1072. The fact that the statute does not give a time period in which the Attorney General must certify that a court has lifted a stay of execution may be an oversight by the Legislature, but is not a basis for Asay's relief.

**Habeas Petition**

Asay's petition nominally raises four claims attacking the constitutionality of his death sentences. However, these claims are, in essence, an Eighth Amendment attack on his sentences based on the nonunanimous verdicts using this Court's decision in Hurst v. State, 202 So. 3d 40 (Fla. 2016), cert. denied, 137 S. Ct. 2161 (2017) and the Legislature's revision of section 921.121, Florida Statutes, in response to this Court's decision in Perry v. State, 210 So. 3d 630 (Fla. 2016). In other words, Asay asserts that his death sentences cannot withstand Eighth Amendment scrutiny because this Court's refusal to grant him relief is arbitrary and capricious. Asay's argument is not novel and has been previously rejected by this Court. Accordingly, Asay has not presented a basis for relief.

During Asay's prior warrant proceedings, he challenged the constitutionality of his death sentence based upon the requirement of chapter 2016-13's ten-to-two vote requirement. Asay filed his second habeas petition on April 13, 2016, arguing that he should be entitled to relief pursuant to chapter 2016-13, Laws of Florida, because his nine-to-three jury vote violated the requirement of a ten-to-two vote under the new law. The Court denied Asay's second habeas petition in its opinion. Asay V, 210 So. 3d at 11 ("We deny Asay's petition based on our decision in Perry[,] that chapter 2016-13, Laws of Florida, is unconstitutional and based on our decision today that Hurst cannot be applied retroactively to Asay.").

Asay's present claim is based on chapter 2017-1, Laws of Florida, unlike his prior petition, which addressed chapter 2016-13. Asay argues that chapter 2017-1, Laws of Florida, creates a substantive right to a life sentence unless a jury unanimously recommends otherwise. Asay acknowledges that the new law is identical to chapter 2016-13, Laws of Florida, with the exception of the unanimous jury vote requirement. Despite Asay's contention that this claim is based purely on chapter 2017-1, but for the title and jury vote requirement, this claim is identical to Asay's previous claim in his petition for a writ of habeas corpus in case number SC16-628. [6]

Asay's claims applying the retroactive application of Hurst v. State, and Chapter 2017-1, Laws of Florida, are controlled by this Court's decision in Hitchcock v. State, No. SC17-445. Hitchcock, SC17-445, Slip op. at 2-3 ("We have consistently applied our decision in Asay V, denying the retroactive application of Hurst v. Florida as interpreted in Hurst v. State to defendants whose death sentences were final when the Supreme Court decided Ring v. Arizona, 536 U.S. 584 (2002).")

---

6. In his motion for rehearing, Asay argued that he was not presented an opportunity to make an argument based on Hurst v. State to this Court. We denied rehearing. Asay v. State, 2017 WL 431741 (Fla. Feb. 1, 2017).

Because Asay has not presented a novel claim for this Court's consideration, we deny Asay's petition.

**CONCLUSION**

For the foregoing reasons, we affirm the circuit court's denial of Asay's third successive motion for postconviction relief and deny Asay's petition for a writ of habeas corpus. Because we find that Asay is not entitled to relief, we deny his motion for a stay of execution and his application for a stay of execution. No rehearing will be entertained by this Court and the mandate shall issue immediately.

It is so ordered.

LABARGA, C.J., and QUINCE, POLSTON, and LAWSON, JJ., concur.
LEWIS and CANADY, JJ., concur in result.
PARIENTE, J., dissents with an opinion.

PARIENTE, J., dissenting.

I dissent because the jury's 9-3 recommendations for death render Asay's sentences of death constitutionally unreliable pursuant to Florida's independent right to trial by jury under article I, section 22, of the Florida Constitution, as well as the right to trial by jury under the Sixth Amendment to the United States Constitution, and the right against cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Asay's execution is set for August 24, 2017. Asay will be the first defendant put to death in Florida since the United

- 17 -

States Supreme Court held Florida's capital sentencing scheme unconstitutional in January 2016. Hurst v. Florida, 136 S. Ct. 616 (2016). Not only was Asay's sentence imposed under a statute that was rendered unconstitutional under the Sixth Amendment, but his execution will be the result of a 9-3 jury recommendation for death,[7] which this Court has declared unreliable under the Eighth Amendment to the United States Constitution. Hurst v. State (Hurst), 202 So. 3d 40, 60 (Fla. 2016), cert. denied, 137 S. Ct. 2161 (U.S. May 22, 2017).

In addition, I dissent because Asay has been wrongly denied access to the complete set of documents that may support his claim that Florida's newest lethal injection protocol, which has yet to be administered on any criminal defendant in this state or any other state, violates the Eighth Amendment and stands counter to this Court's opinions in Muhammad v. State, 132 So. 3d 176 (Fla. 2013), and Valle v. State, 70 So. 3d 525 (Fla. 2011). In its rush to execute Asay, the State has jeopardized Asay's fundamental constitutional rights and treated him as the proverbial guinea pig of its newest lethal injection protocol.

First, I would stay Asay's execution until the United States Supreme Court addresses his pending petition for a writ of certiorari. Although the State delayed filing its response to Asay's petition for a writ of certiorari in the United States

---

7. Asay v. State (Asay V), 210 So. 3d 1, 7 (Fla. 2016), petition for cert. filed, No. 16-9033 (U.S. Apr. 29, 2017) (pending).

Supreme Court, the State simultaneously certified to the Governor that there were no outstanding stays on Asay's execution and, therefore, the Governor could proceed with rescheduling Asay's execution. Thus, the State urged the Governor to reschedule Asay's execution while stalling at the United States Supreme Court. This conduct should not be rewarded.

As to the most compelling constitutional argument, for the reasons fully set forth in my concurring in part and dissenting in part opinion in Asay V and, most recently, my dissenting opinion in Hitchcock v. State, No. SC17-445 (slip op. issued Fla. Aug. 10, 2017), I would apply Hurst retroactively to Asay to ensure that he is afforded the same basic fundamental protections as Timothy Hurst and other defendants.

## I. Pending Petition for Writ of Certiorari

I would stay Asay's execution to allow the United States Supreme Court to determine whether it will grant or deny Asay's pending petition for writ of certiorari from this Court's opinion in December 2016. Asay V, 210 So. 3d 1. The State's actions—representing to the Governor that there were no stays on Asay's execution, while obtaining Asay's prior consent to an extension in which to file a response to Asay's petition for a writ of certiorari—should not be condoned. During the nineteen years I have served on this Court, we have never allowed an execution to proceed while there are pending matters in other courts regarding the

- 19 -

crime for which the defendant was to be executed. Asay is entitled to resolution of his outstanding constitutional claims before being executed. I hope that the United States Supreme Court will intervene to prevent such a clear injustice.

## II. Florida's New Lethal Injection Protocol

I also dissent because the incomplete discovery allowed to Asay compromised his ability to establish his claim that Florida's newly established lethal injection protocol constitutes cruel and unusual punishment under the Eighth Amendment, leading to postconviction proceedings that were anything but full and fair. On January 4, 2017, the Florida Department of Corrections (DOC) adopted Florida's new lethal injection protocol ("the new protocol"). On July 28, 2017, after an evidentiary hearing, the circuit court denied Asay's motion for postconviction relief challenging the constitutionality of the new protocol.

Asay argues that the new protocol is unconstitutional under the Eighth Amendment because it creates a substantial risk of harm, and, in light of other, readily available drugs that have no risk of pain, Asay has established a right to relief. Majority op. at 10. Specifically, Asay argues that the new protocol violates the Eighth Amendment because etomidate, which replaced midazolam as the first drug in the three-drug lethal injection protocol, causes venous pain upon injection and myoclonus—seizure-like movement. The parties stipulate that etomidate has never been used in a lethal injection anywhere in the United States.

- 20 -

In Glossip v. Gross, 135 S. Ct. 2726 (2015), the United States Supreme Court set the standard for establishing that a State's lethal injection protocol amounts to cruel and unusual punishment under the Eighth Amendment. To obtain relief, a "condemned prisoner [must] establish[] that the State's lethal injection protocol creates a demonstrated risk of severe pain. [And] [h]e must show that the risk is substantial when compared to the known and available alternatives." Id. at 2737 (quoting Baze v. Rees, 553 U.S. 35, 61 (2008)) (third and fourth alterations in original). While I agree that Asay has not yet met this very high standard for granting relief on this claim under the evidence presented, I write to explain why Asay should be granted further requested discovery to establish his claim.

Asay argues that "numerous states, including those with the most active death chambers, use a single drug protocol, without any reported incidents." Initial Br. of App., Asay v. State, SC17-1400 (Fla.), at 67. As I wrote ten years ago, I am at a loss to understand why this State has not done so. Schwab v. State, 973 So. 2d 427, 429 (Fla. 2007) (Pariente, J., concurring). As I wrote in Schwab, "[i]f I were in the executive branch and in charge of lethal injections for this state, I would urge the adoption of a one-drug protocol so that only a lethal dose of sodium pentothal would be necessary." Id. (Pariente, J., concurring). I would also explore "other means to monitor the state of consciousness, such as the Bispectral Index (BIS) monitor, and would employ individuals who have the medical training

- 21 -

and expertise necessary to adequately assess consciousness." Id. at 430 (Pariente, J., concurring). This is especially concerning in light of the evidence presented in this case that the new drug, etomidate, produces an incredibly short state of unconsciousness. But I am not the executive branch.

On the other hand, what is within the province of the judicial branch is staying the execution until Asay receives the required discovery to properly challenge the new protocol. Asay argues that he was wrongly denied access to documents relating to the new protocol, and I agree. Majority op. at 6-7. The majority opinion summarily dismisses this claim, contending that "[b]ecause Asay cannot demonstrate that he is entitled to relief on claims related to these records, the circuit court properly summarily denied relief." Majority op. at 10. However, the majority misses the point. Asay has a colorable claim for relief, that a new lethal injection protocol—yet to be administered on any defendant in any state— could violate Asay's right against cruel and unusual punishment. Asay needs the records for the exact purpose contemplated under Florida Rule of Criminal Procedure 3.852(i)(2), to prove that his own execution with the new protocol will constitute cruel and unusual punishment. Majority op. at 10. His timely request was not a "fishing expedition," as he had no reason to know that the new protocol would apply to him until he received notice from the DOC on July 10, 2017. Majority op. at 9 (quoting Sims v. State, 753 So. 3d 66, 70 (Fla. 2000)).

The State adopted the new protocol on January 4, 2017. However, despite its explicit requirement that the new protocol be provided to the defendant "after the warrant is signed," which in this case was on January 8, 2016, it was not until the circuit court ordered the State to file and serve a copy of the protocol on July 10, 2017, that Asay received a copy of the new protocol. See majority op. at 5. Thus, the State, which admittedly anticipated litigation surrounding the new protocol, purposefully delayed for more than six months providing the information necessary to challenge it—namely the new drugs used—to Asay who had been the subject of an active death warrant.

Rather than giving Asay time to procure the documents needed to challenge this never-before-used protocol, the State now contends that time is of the essence in meeting the execution deadline of August 24, 2017, chosen by Governor Scott. Majority op. at 6. Even more troublesome, the State has relentlessly fought Asay's attempts to obtain records relating to the new protocol, causing even further delay. One would assume that the administration of the ultimate penalty of death would compel the State to proceed transparently, rather than under the veil of executive privilege. Indeed, the State said as much when adopting the new protocol on January 4, 2017; Julie L. Jones, Secretary of the Department of Corrections, represented that "[a]dditional guiding principles of the lethal injection process are that it should not be of long duration, and that while the entire process of execution

- 23 -

should be transparent, the concerns and emotions of all those involved must be addressed." Reply Brief, <u>Asay v. State</u>, SC17-1400 (Fla.), at 8.

When Asay and his counsel learned of the new protocol, they immediately filed a public records request with both the DOC and the Florida Department of Law Enforcement (FDLE) requesting information related to the new drugs to be used in the new protocol. Both the DOC and the FDLE objected to this request. In fact, it was only after Asay's motion for rehearing that the circuit court granted, in part, his request for documents. Eventually, the DOC disclosed mostly redacted records relating to the new protocol. To this date, the State has refused to indicate why the new protocol was adopted or identify the manufacturer of the drugs used in the new protocol. The State's attempts to shift the burden to Asay are improper; it is the State's duty, as the party who holds the information, to make it available to Asay.

The State's actions in this case run afoul of this Court's opinions in both <u>Muhammad</u> and <u>Valle</u>. In <u>Valle</u>, this Court remanded in part Valle's case for an evidentiary hearing concerning the efficacy of one of the drugs used in the lethal injection protocol as an anesthetic. 70 So. 3d at 526. This Court's primary concern in remanding for an evidentiary hearing centered on the contention that " ' if the inmate is not fully unconscious when either pancuronium bromide or potassium chloride [the second and third drugs in the protocol] is injected, or when

either of the chemicals begin to take effect, the prisoner will suffer pain.' " Id. (quoting Lightbourne v. McCollum, 969 So. 2d 326, 351 (Fla. 2007)). For Valle to fully litigate this claim, this Court further ordered that the "DOC . . . produce correspondence and documents it has received from the manufacturer of pentobarbital concerning the drug's use in executions, including those addressing any safety and efficacy issues." Id. Thus, in Valle, this Court determined that as much information as possible from the drug manufacturer was necessary to ensure that Valle's right against cruel and unusual punishment under the Eighth Amendment was not violated. Indeed, this Court, addressing similar concerns in Muhammad, required the DOC to provide Muhammad "correspondence and documents it received from Hospira [the manufacturer of the drug] concerning the drug's use in executions or otherwise, including those addressing any safety and efficacy issues." 132 So. 3d at 192.

Additionally, the DOC has refused to disclose to Asay information relating to previous executions in the State, even though this information was relied upon by the DOC's expert witness, Buffington, to dismiss Asay's arguments regarding the constitutionality of the new protocol. See majority op. at 11. Indeed, Asay attempted to challenge certain aspects of the new protocol, including the timing of the consciousness check, but was unable to do so because the DOC refused to honor his public records request. The evidentiary hearing in this case makes clear

that the timing of the steps in the execution process are essential given the limited amount of time for which etomidate produces unconsciousness. See majority op. at 11. The best way to review and predict the timing of the steps in Asay's execution would be to refer to the DOC and FDLE logs, notes, memoranda, letters, electronic mail, and facsimiles relating to the prior six executions. Yet, both organizations have refused to produce the requested documents.

Even accepting the use of a three-drug protocol, it is troublesome that the State deliberately concealed the identity of the manufacturer of the challenged drug—etomidate. I would grant disclosure of the manufacturer's identity to allow Asay the opportunity to fully present his claim that the new protocol amounts to cruel and unusual punishment. At the evidentiary hearing before the circuit court, considerable testimony was presented relating to both the efficacy of etomidate and whether it causes pain. Majority op. at 12. Additionally, there was some disagreement about how quickly etomidate induces unconsciousness and the duration of the state of unconsciousness, which apparently differs depending on the dosage. Despite all of these concerns, which are similar to those in both Valle and Muhammad, Asay has not been provided the manufacturer's identity, nor was he given adequate time to attain the necessary information to thoroughly contest the new protocol. The manufacturer of the drug, who has itself stated that the drug will be "misused" if it is used for executions, could shed light on the data used to

compose the drug's package insert, which details safety and use information, to properly interpret the language in the package insert, and to generally provide the most accurate information relating to the administration of the most final of penalties. See majority op. at 11-12.

In sum, the State's actions in both intentionally failing to disclose the new protocol to Asay for over six months and then continuing to fight every one of his requests for production display a rush to execution without first ensuring that this execution withstands constitutional scrutiny. Through no fault of his own, Asay was unable to properly prepare his multiple challenges to Florida's new lethal injection protocol, which has yet to be administered on Asay or any other capital defendant in the United States.

### III. Retroactivity of the Eighth Amendment Right to Unanimity

In his petition for a writ of habeas corpus at issue in this case, Asay claims a right to retroactive application of the Eighth Amendment right to unanimity in the jury's final recommendation for death. See Hurst, 202 So. 3d at 59-63. As I stated in my dissenting opinion in Hitchcock, this Court's opinion in Asay V is not dispositive on the retroactive application of the Eighth Amendment right to unanimity in the jury's recommendation for death. See Hitchcock, slip op. at 9-10 (Pariente, J., dissenting). An Eighth Amendment retroactivity analysis obviously

requires a different analysis than that of the retroactivity of the Sixth Amendment right.

As I emphasized in <u>Asay V</u>, "Applying decisions of fundamental constitutional significance retroactively to defendants in similar circumstances is essential to 'ensuring fairness and uniformity in individual adjudications.' " 210 So. 3d at 32 (Pariente, J., concurring in part and dissenting in part) (quoting <u>Witt v. State</u>, 387 So. 2d 922, 925 (Fla. 1980)). Likewise, as Justice Perry explained, Asay is similarly situated to defendants who have received <u>Hurst</u> relief, rendering Asay's execution constitutionally unfair:

> Asay committed two murders on the night of July 17, 1987. His sentence became final on October 7, 1991, when the United States Supreme Court denied certiorari. <u>See</u> <u>Asay v. Florida</u>, 502 U.S. 895 (1991). Asay's nine-to-three jury recommendation that resulted in a death sentence would not be constitutional if <u>Hurst v. Florida</u> applied to him . . . . Yet, . . . another defendant who committed his offense on an earlier date but had his sentence vacated and was later resentenced after <u>Ring</u>, cannot receive the death penalty without the protections articulated in <u>Hurst</u>. Timothy Hurst committed his crimes on May 2, 1990, and was originally sentenced on April 26, 2000, which was final October 21, 2002, a few short months after the decision in <u>Ring</u>. The majority's application of <u>Hurst v. Florida</u> makes constitutional protection depend on little more than a roll of the dice. This cannot be tolerated.

<u>Id.</u> at 39-40 (Perry, J., dissenting) (footnotes omitted).

For all the legitimate reasons raised by various justices on the Supreme Court at various times, the critical linchpin of the constitutionality of the death

penalty is that it be imposed in a reliable and not arbitrary manner.[8]  We have

explained in detail in our opinion in Hurst why a unanimous jury verdict, required

in this State for all criminal convictions, must be required for all death penalty

verdicts:

> The principle that, under the common law, jury verdicts shall be unanimous was recognized by this Court very early in Florida's history in Motion to Call Circuit Judge to Bench, 8 Fla. 459, 482 (1859).  In the 1885 Constitution, the right to trial by jury was given even more protection by the promise that "[t]he right of trial by jury shall be secured to all, and remain inviolate forever."  Declaration of Rights, § 3, Fla. Const. (1885).  And, in 1894, this Court again recognized that in a criminal prosecution, the jury must return a unanimous verdict. Grant v. State, 14 So. 757, 758 (1894).  In 1911, this Court confirmed the unanimity requirement in Ayers v. State, 57 So. 349, 350 (1911), stating that "[o]f course, a verdict must be concurred in by the unanimous vote of the entire jury."  Almost half a century later, in Jones v. State, 92 So. 2d 261 (Fla. 1956), again acknowledging that "[i]n this state, the verdict of the jury must be unanimous," this Court held that any interference with the right to a unanimous jury verdict denies the defendant a fair trial as guaranteed by the Declaration of Rights of the Florida Constitution.  Id. at 261 (On Rehearing Granted).  Thus, Florida has always required jury verdicts to be unanimous on the elements of criminal offenses.

---

8. When the United States Supreme Court reinstated the death penalty in 1976, it explained that a death penalty imposed under procedures that "create[] a substantial risk that it would be inflicted in an arbitrary and capricious manner" violates the Eighth Amendment's protection against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 188 (1976).  This requirement against arbitrary imposition of the death penalty recognized the finality of the determination of "whether a human life should be taken." Id. at 189.  Despite this requirement, Justice Breyer outlined in detail in Glossip the various ways in which the death penalty is arbitrarily imposed, such as by race, gender, geography, resources, and even political pressures. Glossip, 135 S. Ct. at 2760-62 (Breyer, J., dissenting).

In capital cases, Florida's early laws also indicate that jurors controlled which defendants would receive death. When Florida was still a territory, the penalty for defendants convicted of murder was death by hanging. See Acts of the Legislative Council of the Territory of Florida, An Act for the Apprehension of Criminals, and the Punishment of Crimes and Misdemeanors, § 21 (1822). Under this type of mandatory statute, the jury's factual findings on the elements of the crime also necessarily served as the elements necessary for imposition of a sentence of death.

Hurst, 202 So. 3d at 55 (footnote omitted). In this case, Asay's sentences of death imposed by 9-3 jury votes are not constitutionally reliable. And, as Justice Perry stated in Asay V, Asay would be in the same position as Timothy Hurst if Hurst applied to him. 210 So. 3d at 39-40 (Perry, J., dissenting). For all the reasons set forth in my prior dissents in Asay V and Hitchcock, I dissent from executing this defendant based on a 9-3 recommendation, which if rendered today, would require a life sentence.

## CONCLUSION

Executing Asay when he has a pending petition for certiorari at the United States Supreme Court, has not received full discovery on Florida's newly adopted lethal injection protocol, and, most importantly, was sentenced to death after a jury recommended sentences of death by a vote of 9-3, violates the foundational principles of both the Florida and United States Constitutions. I cannot support the majority's decision to deny Asay, on the eve of his execution, proper discovery to establish his claim that the procedure to be used in his death constitutes cruel and

- 30 -

unusual punishment.  Nor can I agree that a decision based in the Sixth

Amendment precludes Asay's ability to assert his constitutional rights under the

Eighth Amendment.

Accordingly, I dissent.

An Appeal from the Circuit Court in and for Duval County,
Tatiana Radi Salvador, Judge - Case No. 161987CF006876AXXXMA
And an Original Proceeding – Habeas Corpus

Martin J. McClain and Linda McDermott of McClain & McDermott, P.A., Wilton
Manors, Florida; and John Abatecola, Estero, Florida,

for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, and Charmaine M. Millsaps, Senior Assistant
Attorney General, Tallahassee, Florida,

for Appellee/Respondent

Karen M. Gottlieb of Florida Center for Capital Representation at Florida
International University College of Law, Miami, Florida,

for Amicus Curiae Florida Center for Capital Representation at Florida
International University College of Law