PARIENTE, J., concurring in part and dissenting in part.
I agree that Jimenez is not entitled to relief on his second post-warrant appeal regarding newly discovered evidence (No. SC18-1321). See majority op. at 476-91.[19] However, I dissent from affirming the postconviction court's denial of Jimenez's first post-warrant appeal regarding Florida's lethal injection protocol (No. SC18-1247). See majority op. at 471-76. For the reasons explained below, I would reverse and remand for an evidentiary hearing on these claims.
Florida's Lethal Injection Protocol
For the fifth time since this Court's decision in Asay VI ,[20] Florida will execute a death-sentenced defendant using a lethal injection protocol that the defendant argues is in violation of the Eighth Amendment to the United States Constitution. See majority op. at 473-74. Indeed, the majority relies on Asay VI to deny Jimenez relief on these claims. See majority op. at 474-75. However, Jimenez challenges Florida's lethal injection protocol in light of new and troubling information, specifically regarding Florida's most recent execution, which, at the very least, should be fully developed at an evidentiary hearing. I *492 disagree with the majority that Jimenez's claims "are insufficient to require revisiting our holding in Asay VI ." Majority op. at 475.
In my dissenting opinion in Asay VI , I explained that Asay was unconstitutionally denied access to documents that may have supported his claim that Florida's new lethal injection protocol-which replaced midazolam with etomidate as the first drug in the protocol, intended to induce unconsciousness-violates the Eighth Amendment's bar against cruel and unusual punishment. 224 So.3d at 705-08 (Pariente, J., dissenting). Although Asay VI is now final, Jimenez presents new, additional evidence from the executions Florida has performed since that decision-Mark Asay on August 24, 2017, Michael Lambrix on October 6, 2017, Patrick Hannon on November 8, 2017, and Eric Branch on February 22, 2018-regarding the possibility that the lethal injection protocol subjects the defendant to cruel and unusual punishment.
As to the administration of the first drug in the lethal injection protocol, etomidate, the postconviction court wrote in its order denying Jimenez's motion: "As the administration of the etomidate commenced, Branch released a guttural yell or scream.... Branch's legs were moving, his head moved, and his body was shaking." Order, at 4.[21] His body "continued to shake and his chest was heaving for another four minutes." Initial Br., at 38. The postconviction court noted and the majority accepts that all of this took place "before the consciousness check was performed before the subsequent administration of the second and third drugs." Order, at 4; majority op. at 475. Dr. Lubarsky, "an experienced anesthesiologist," Initial Br., at 29, opined that this was "indicative of insufficient anesthetic depth prior to the administration of the second and third drugs." Id. at 38.
As to the second and third drugs, Jimenez alleges that-according to Dr. Lubarsky's review of Florida's lethal injection protocol and records from Branch's execution-Branch had only "1/10th of the clinical dose of etomidate... in his bloodstream" by the end of the execution process, an amount that is "insufficient to ensure that" he did "not feel the excruciating pain of the second and third drugs." Id. at 31. In Dr. Lubarsky's opinion, Branch's scream was "objective evidence" of his "experiencing significant pain during [the] execution," id. at 35-not "in protest of his execution or a reaction to etomidate." Majority op. at 475. Of course, this information was unknown when this Court rejected Asay's challenge to the new lethal injection protocol.
In my view, this new information makes it impossible to allow another execution to proceed without thoroughly reviewing whether Florida's lethal injection protocol subjects defendants to a substantial risk of pain, in violation of the Eighth Amendment. Thus, I would reverse and remand for an evidentiary hearing.
Further, I reiterate my long-standing concern that a one-drug protocol has a greater likelihood of reducing any substantial risk of pain. Specifically, Florida's continued use of a paralytic agent, such as rocuronium bromide, could lead to a situation where defendants like Jimenez are entirely aware of the execution, including the attendant extreme pain and suffering, but unable to inform anyone of or indicate such awareness. See Initial Br., at 49. I again urge the executive branch to adopt a one-drug protocol to avoid this unconstitutional risk. See Asay VI , 224 So.3d at 705 *493 (Pariente, J., dissenting) (quoting Schwab v. State , 973 So.2d 427, 429 (Fla. 2007) (Pariente, J., concurring) ).[22]
Short Warrant Period
Finally, I note the seriously constricted warrant period in this case. As the majority explains, Governor Scott signed Jimenez's death warrant on July 18, 2018, scheduling his execution for 27 days later-August 14, 2018. Majority op. at 470 & n.1. The original scheduling order determined July 31, 2018, as the "deadline for completing proceedings before the postconviction court." Majority op. at 471.
This extremely short warrant period created a fire drill approach to the review of Jimenez's claims. It was not until after the postconviction court denied Jimenez's sixth successive postconviction motion (filed on August 6, 2018) that this Court entered a stay of execution. See majority op. at 470-71. The postconviction court and Jimenez's attorneys were forced to race against the clock in reviewing and presenting all of Jimenez's claims, respectively. But for this Court entering a stay of execution as a result of Jimenez's second post-warrant appeal, this Court would have also had inadequate time to thoroughly review his claims.
While I realize that all proceedings should be completed by the time the Governor signs a death warrant, some claims, such as those challenging the execution method, cannot be raised or evaluated until the signing of the death warrant. At the least, defendants must have adequate time to investigate and raise and courts must have adequate time to properly review these warrant-based claims.
Since executions resumed in Florida after Hurst , the judicial system-the circuit courts, this Court, and the United States Supreme Court-has been faced with increasingly short warrant periods, the shortest being the one in this case-a mere 27 days.[23] However, the Legislature-tasked with providing "the method, the means, and the instrumentalities for executing death sentences imposed by the courts pursuant to the law," Abdool v. Bondi , 141 So.3d 529, 543 (Fla. 2014) (quoting Blitch v. Buchanan , 100 Fla. 1202, 131 So. 151, 155 (1930) )-has determined that a warrant period of 180 days is reasonable. See § 922.052(2)(b), Fla. Stat. (2018) ; Abdool , 141 So.3d at 544. Thus, I urge the Executive branch, in setting warrant periods, to consider the judicial proceedings that must be completed before the date of execution.
CONCLUSION
For these reasons, while I agree that Jimenez is not entitled to relief on his newly discovered evidence claims, I would reverse and remand for an evidentiary *494 hearing on his claims challenging Florida's lethal injection protocol.
QUINCE, J., concurs.

As to the majority's discussion of this issue, I reiterate the importance of "express[ing] the prejudice prong of Brady [v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),] in terms of a probability sufficient 'to undermine confidence in the verdict' and not a reasonable probability of a different result." Pittman v. State , 90 So.3d 794, 822 (Fla. 2011) (Pariente, J., concurring in result) (quoting Strickler v. Greene , 527 U.S. 263, 290, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ).

Asay v. State (Asay VI ), 224 So.3d 695 (Fla. 2017).

The postconviction court's Order Denying Successive Motion to Vacate Judgments of Conviction & Sentence is cited herein as "Order."

Indeed, it appears that many other states that still impose the death penalty have adopted one-drug protocols. Eight states-Arizona, Georgia, Idaho, Missouri, Ohio, South Dakota, Texas, and Washington-have used a single-drug method for executions. Six other states-Arkansas, California, Kentucky, Louisiana, North Carolina, and Tennessee-have announced plans to use a one-drug protocol. Death Penalty Info. Ctr., State by State Lethal Injection , https://deathpenaltyinfo.org/state-lethal-injection (last visited Aug. 6, 2018).

The warrant period for Asay's execution was 52 days. Asay VI , 224 So.3d at 699. The warrant period for Lambrix's execution was 34 days. Lambrix v. State , 227 So.3d 112, 112 (Fla. 2017). The warrant period for Hannon's execution was 33 days. Hannon v. State , 228 So.3d 505, 508 (Fla. 2017). The warrant period for Eric Branch's execution was 34 days. Branch v. State , 236 So.3d 981, 983-84 (Fla. 2018).